DWIGHT ARNOLD BOOR, JR., et al., by their next friend, LENORA BOOR DANIELS, appellants, v. DWIGHT BOOR et al., appellees.

No. 47628.

(Reported in 43 N.W.2d 155)

974

JUNE 13, 1950.

REHEARING DENIED SEPTEMBER 25, 1950.

Putnam, Putnam & Putnam, of Des Moines, and R. B. Hawkins, of Leon, for appellants.

R. E. Killmar and W. W. Reynoldson, both of Osceola, for appellees.

WENNERSTRUM, J.—Plaintiff brought an action in Decatur County for a writ of habeas corpus therein seeking the custody and possession of her two minor sons, Dwight Arnold Boor, Jr. and Anthony Rex Boor. Dwight Boor, one of the defendants, is the former husband of the plaintiff. They were divorced in Indiana on June 29, 1945. Two or three days prior to the commencement of the Indiana divorce action by the mother and plaintiff herein the father of the two boys took them to the home of his parents, Mr. and Mrs. Newton R. Boor, whose residence is in LeRoy, Decatur County, Iowa. By virtue of the original divorce decree and a supplemental decree entered in the Indiana proceeding on July 30, 1948, the plaintiff claims the right to the custody of the two minor boys. In the present action now before us for review the mother seeks to enforce the provisions of the Indiana decrees. The Decatur District Court, after a trial on the merits, held that it had complete jurisdiction to determine the custody of the children on account of changed circumstances and also held that the custody of the two minor.

boys should remain with the father and his parents. From the decree that so provided the plaintiff has appealed.

Dwight Arnold Boor, Jr. was born August 28, 1940, and Anthony Rex Boor was born September 11, 1942. In the divorce action instituted in Lake County, Indiana, by the mother the original decree entered provided "* * * that plaintiff have custody of the minor children of said parties * * *." It was further provided in said decree "* * * that defendant pay the sum of $60 per month for support of said minors to be paid to the clerk of this court; provided that such minors be in custody of the parents of the defendant and that such support money be paid by the clerk to such grandparents, such minors to remain with said grandparents until further order of this court." It is contended that in the court's minutes of the proceedings relative to the divorce action in Lake County, Indiana, said minutes show the following: "* * * said minors to be *kept* with the grandfather of said minors, Newton Boor, until the further order of the court * * *." (Italics supplied.)

The record further shows that on or about June 16, 1948, presumably as the result of a demand for the possession of the minor children by the mother, the appellant herein, the defendant in the Indiana divorce proceedings, the father, the appellee herein, filed a motion to modify the original divorce decree. In this proceedings the wife also filed a petition to modify the decree and in said proceedings filed answer to the husband's motion.

It is further shown that in connection with the proceedings to modify the decree that on July 30, 1948, a hearing was had on the respective motions and that the court found for the appellant herein (the mother) and held that the previous order relative to the keeping of the children by the grandparents should be modified and the supplemental decree provided that the mother of the minor children keep them in Whiting, Indiana, and that the payments for their support be made to her.

It is further shown that on August 9, 1948, there was entered in the Lake County, Indiana, proceedings what is designated as "order of court correcting former entry—nunc pro tunc." This order as entered provided "* * * that defendant pay the sum of $60 per month for support of said minors to be paid to the

clerk of this court; provided that such minors be *kept* by the parents of the defendant * * * such minors to remain with said grandparents until further order of this court." (Italics supplied.)

It is further therein provided "that said entry be made as of the said 29th day of June, 1945, nunc pro tunc." In a preliminary order relative to this nunc pro tunc entry it was stated that through inadvertence, negligence and misprision of the clerk the original order and decree did not express the judgment of the court as rendered. The nunc pro tunc order merely provided that the original decree pertaining to the custody of the minor boys by the grandparents should be changed and that the children should be kept by them.

The evidence shows that on July 31, 1948, one day after the entry of the supplemental decree in the Superior Court of Lake County, Indiana, Lenora Boor Daniels came to Decatur County, Iowa, and made a demand for the possession of the two boys. She was denied her request and thereafter on August 2, 1948, commenced this action in habeas corpus in Decatur County. It will be observed that the nunc pro tunc order in the Superior Court of Lake County, Indiana, was entered subsequent to the commencement of the habeas corpus proceedings. It was the claim of the plaintiff-appellant in the proceedings in the trial court in this state that by virtue of the decree dated June 29, 1945, and the supplemental order of the Superior Court of Lake County, Indiana, dated July 30, 1948, that she was entitled to the custody and possession of the two minor boys. It was the contention of the father, the appellee herein, in the trial court that the two boys were outside of the state of Indiana and domiciled in LeRoy, Decatur County, Iowa, prior to the commencement of the divorce suit. The evidence undeniably shows that the Indiana divorce action was commenced on or about March 6 or 7, 1945, and that the father had taken the children to Decatur County, Iowa, on March 4, 1945. He was served with notice of the pendency of the divorce action on March 15, 1945. In the present habeas corpus action the father contended that the Decatur County District Court had jurisdiction to inquire into the merits and to award the custody of the boys dependent on a determination of what would be for their

best interest and welfare. The trial court further found that there had been a sufficient change of circumstances to warrant the court in awarding the custody of the two boys to their father and in keeping them in the home of his parents. Consequently the proceeding for a writ of habeas corpus was ordered dismissed and the two boys were ordered returned to the care, custody and control of the defendants.

As grounds for a reversal the mother maintains (1) that inasmuch as the original parties to the divorce proceedings in Indiana were before that court and submitted to its jurisdiction that the decrees therein entered relative to the custody of the children are a verity and must be given full faith and credit by the Iowa courts; (2) that minors are incapable of changing their domicile and that one parent cannot change it for them by forcibly taking them out of a state; (3) that inasmuch as there has been no substantial change in conditions after the decree awarding custody by the Indiana court an Iowa court has no power to void the effects of a decree entered in a foreign state.

I. An Iowa court has jurisdiction to determine the ultimate disposition that should be made of minor children residing in this state at the time a decree of divorce was entered in a sister state wherein the custody of the minor children has been attempted to be determined. The Indiana court was without jurisdiction to determine the status of the children not within that state.

In the case of Ex Parte Erving, 109 N. J. Eq. 294, 301, 157 A. 161, 164 (Court of Chancery), it was held that the orders of a New York court, in a divorce action and in a subsequent habeas corpus proceeding pertaining to a child not actually before the New York court or within its jurisdiction, were not entitled to receive full faith and credit by the New Jersey court. It was therein stated:

"Whether the orders of the New York court are res adjudicata as between the father and the mother is beside the issue, which is whether those orders can bind this court as against the infant boy, in determining where his custody should go, he being a resident of this state and subject to its jurisdiction. Each state has the power to determine the status of persons within its jurisdiction and it seems to me that the New York court had

no power to make any order with respect to the boy within the jurisdiction of this court, which would be binding upon him."

In 43 C. J. S., Infants, section 5, page 52, quoted in Pelton v. Halverson, 240 Iowa 184, 190, 35 N.W.2d 759, 762, it is stated: "Jurisdiction to control, and determine and regulate the custody of, an infant is in the courts of the state where the infant legally resides * * *."

In the early Iowa case of Kline v. Kline, 57 Iowa 386, 388, 389, 10 N.W. 825, 826, 42 Am. Rep. 47, in passing upon the claimed jurisdiction of a Wisconsin court to determine the custody of minor children, not in that state at the time of the entry of a divorce decree, this court stated:

"We think it logically follows that, where the minor children are non-residents of the State where the divorce proceedings are had, that the court acquires no jurisdiction as to their custody, simply because the decree can have no extra-territorial force or effect. * * *

"In our opinion the decree, so far as it attempted to fix the custody of the children, was without jurisdiction in the first instance. Want of jurisdiction is a matter which may always be interposed against an adjudication when sought to be enforced, or when any benefit is claimed for it. The want of jurisdiction either of the subject-matter or of the person of either party renders a judgment a mere nullity."

Also holding to the same effect are: Mollring v. Mollring, 184 Iowa 464, 468, 167 N.W. 524; Rodgers v. Rodgers, 56 Kan. 483, 43 P. 779; Elliott v. Elliott, 181 Ga. 545, 182 S.E. 845, 846; Avera v. Trapnell, 193 Ga. 60, 17 S.E.2d 168; Ex Parte Alderman, 157 N. C. 507, 73 S.E. 126, 129, 39 L. R. A., N. S., 988; De la Montanya v. De la Montanya, 112 Cal. 101, 44 P. 345, 32 L. R. A. 82, 53 Am. St. Rep. 165; Milner v. Gatlin, 139 Ga. 109, 76 S.E. 860; Payton v. Payton, 29 N. M. 618, 225 P. 576; Lake v. Lake, 63 Wyo. 375, 182 P.2d 824, 838; Gilman v. Morgan, 158 Fla. 605, 29 So.2d 372, 373, certiorari dismissed on motion of petitioners, 331 U. S. 796, 67 S. Ct. 1740, 91 L. Ed. 1822.

In the case of Duryea v. Duryea, 46 Idaho 512, 516, 521, 269 P. 987, 988, 989, the question of the extraterritorial effect

of a divorce decree is extensively commented upon and it is therein stated:

"Questions relating to the respect to be accorded, extra-territorially, to decrees awarding custody of children have arisen chiefly in two classes of cases. In most instances the parents, or at least one of them, *and the children*, were before the court making the decree. In this class of cases some few courts have refused to be bound by a foreign decree, holding that as soon as the child comes within its jurisdiction, the question of its status becomes one for the local court to determine in the best interests of the child. (In re Alderman, 157 N. C. 507, 73 S.E. 126, 39 L. R. A., N. S., 988.)

"The rule that may be denominated the majority rule, however, in this class of cases, recognizes the conclusiveness of the foreign decree and holds that it may be enforced extraterritorially, providing no change has taken place in the circumstances which would warrant a reopening of the matter. This rule affords exactly the same recognition to a decree of a foreign court that would be accorded to an adjudication within the forum, for it is well established that a decree awarding custody may be modified or changed by the court making it as the circumstances may warrant.

"The second class of cases involves facts similar to those in the case at bar, wherein an attempt has been made to decree the custody of children not within the jurisdiction of the court. In this class of cases it is almost uniformly held that such a decree need be accorded no extraterritorial recognition.

"This holding is supported by principle as well as by authority. In all cases involving divorce and the custody of children, the court has before it for consideration a status, or more properly a double status. Minor, in his Conflict of Laws (1901), p. 208, says of a proceeding of this kind:

" 'Being nothing less than a determination of the guardianship of the children, it is a question of *double* status, relating no less to the status of the children than to that of the respective parents. The decree for the children's custody therefore is as much a decree in rem as is the divorce itself, but with a more extended res.'

"To the same effect is 2 Bishop on Marriage and Divorce (2d Ed.) sec. 1189 (189).

"It is elementary that each state may determine the status of its own citizens. Milner v. Gatlin [139 Ga. 109, 76 S.E. 860], supra. The law that governs the status of any individual is the law of his legal situs, that is, the law of his domicile. (Minor, supra, p. 131.) At least this jurisdictional fact—dominion over the legal situs—must be present before a court can presume to adjudicate a status, and in cases involving the custody of children, it is usually essential that their actual situs as well be within the jurisdiction of the court before its decree will be accorded extraterritorial recognition. * * *

"But it may be urged that a decree in a foreign state, though not binding on nonresident children, is binding on the parents if they appear and subject themselves to its jurisdiction. Such a contention ignores the nature of status and particularly of status as applied to infant children. 'The status of an individual, used in a legal sense, is the legal relation in which that individual stands to the rest of the community.' "

The mother has cited some cases holding contrary to the conclusions which we have herein announced. However, the weight of the authorities is as we have heretofore set forth. In the case of Wakefield v. Ives, 35 Iowa 238, 240, cited by the mother, the decision was, in part, determined on the fact that the child was within the jurisdiction of the Minnesota court. The portion of the opinion in Thrift v. Thrift, 54 Mont. 463, 465, 171 P. 272, 273, cited by the mother is not applicable to the facts in the instant case. Indeed, it is of interest to note that the Montana court therein states:

"The decree has no extraterritorial effect, and insofar as it attempts to operate upon the status of the minor child residing in Indiana, it is a nullity."

It is apparent, under the authorities, that inasmuch as the Indiana court did not have jurisdiction of the minor boys at the time of the institution of the divorce proceedings and the entry of the original and supplemental decrees, they then being in the state of Iowa, that an Iowa court is not required to give

full faith and credit to the decree entered in the Indiana divorce proceedings relative to their custody.

■ II. Even though the Indiana court may have found and held that it had jurisdiction of the children this does not preclude an Iowa court from questioning the foreign judgment for want of jurisdiction. This was the holding of Sullivan v. Kenney, 148 Iowa 361, 376, 126 N.W. 349, 354, where it is stated:

"* * * it will be found that a number of courts sustain the views expressed for appellant and hold that a foreign judgment cannot be attacked for want of jurisdiction where the foreign court expressly finds that jurisdiction does exist. But that is not the rule in this state, nor is it the one sustained by the greater weight of authority." (Citing cases.)

■ III. There is conflicting evidence as to the domicile of the father at the time of the original divorce proceedings and subsequent thereto. It is his contention that prior to that time he had changed his domicile from that of Indiana to Decatur County, Iowa. There is documentary evidence which contradicts his contention. The domicile of an infant is ordinarily the same as that of the father. Helton v. Crawley, 241 Iowa 296, 306, 41 N.W.2d 60, 67. In the above cited case there is a quotation from the case of State ex rel. Board of Christian Service v. School Board, 206 Minn. 63, 65, 66, 287 N.W. 625, 626, which is here applicable. It is there stated: " 'With respect to residence, the law is more liberal. Where that alone is involved, an infant can acquire one different from that of his domicile or the domicile of his father or guardian.' "

It is further stated in the case of Helton v. Crawley, supra, at page 319 of the Iowa Reports and page 73 of the North Western Reporter, as follows:

"An adult or a child may be domiciled in one state and live or reside in another state. In re Estate of Jones, 192 Iowa 78, 80, 182 N.W. 227, 16 A. L. R. 1286. In the case of a child, it ordinarily needs the protection of the sovereign and the exercise of the supervisory powers of the chancellor in the State where he is living rather than in that of his domicile, or of his technical legal residence."

■ In the instant case the domicile of the children is not determinative of the issues here involved.

■ IV. We are here concerned, therefore, with the determination of the question what will be for the best interest and general welfare of the children. Inasmuch as we have held that the Indiana court did not have jurisdiction to determine the custody of the minor children we are not necessarily confined to the question whether or not there has been a change of circumstances since the entry of the Indiana divorce decree. At the time that they were brought to Iowa the older boy was approximately four and one-half years of age and the younger boy was approximately two and one-half years old. They have resided over five years in this state with their father and grandparents and for a period of time with an aunt and uncle. The older boy has been in school for several years and the younger boy for a short time. It is shown that the father has given up his employment as a construction worker which was remunerative but which took him away from the place of his residence from time to time. The home of the grandparents is in a small Iowa community with apparent adequate school facilities. The grandparents' home is located on a block of land in LeRoy. It is shown that the children are being properly reared and that the father and grandparents are desirous of continuing the care, custody and control of the two minor boys. They have been in regular attendance at school and also in a Sunday school. It should be stated that for a time the boys were at the home of an aunt and uncle but there is no showing but that this home was a proper one and that the children received adequate care while there.

It is our conclusion that the ultimate decision in this case is controlled by our recent opinion of Helton v. Crawley, supra, Bliss, J. There are numerous citations therein set forth which it is not necessary for us to again review. In the last cited case this court definitely shows that the greater weight of the authorities grant to the court having jurisdiction where the child resides the right to determine what is for its best interest. This is summarized in the statement therein made as follows:

"There are a few cases in which the court has declined to exercise jurisdiction where the child was domiciled in another

state, but such holdings are contrary to the great majority of decisions. The latter decisions are that where there is a controversy over the custody of a child and the aid of the court has been invoked to determine the issue and the litigants are properly before the court, and the infant is physically present and is within the borders of the state and the territorial jurisdiction of the court, it has jurisdiction and it is the duty of the court to assume and exercise that jurisdiction, notwithstanding the domicile, or the so-called legal residence of the child, is in another state."

Following the Indiana original divorce decree the mother, the appellant herein, was not in good health for some time. It is her claim that this condition was the result of cruel and inhuman treatment she received from her former husband prior to the divorce. It is her further contention that because of her physical condition she was unable, at an earlier date, to seek the custody of her two sons. She remarried on June 23, 1948. Apparently, due to frequent postponements of the hearings in connection with the habeas corpus proceedings in Decatur County, Iowa, her present husband was unable to be present and testify. The record, as well as exhibits introduced, show that if the children were returned to Whiting, Indiana, the home that would be provided for them would be in an apartment on a busy thoroughfare. They would live in a business district. Although it is shown that some of the near-by residents are apparently people of prominence in that community and that there are two banks near by yet it is also shown that the apartment is but a few doors from at least one liquor store and a pool hall. There would be no place for the children to play other than in a limited place to the rear of the buildings or in the street. We are mindful of the fact that there is a presumption to the effect that a mother is better qualified to rear her children than perhaps anyone else. However, under the circumstances, we feel justified in holding that the best interest of the children warrants their being reared in the small Iowa community in which the grandparents and the father live rather than with the surroundings that would be afforded them if they were returned to the

984

care of the mother. Boone v. Boone, 80 U. S. App. D. C. 152, 150 F.2d 153, 155.

We therefore affirm.—Affirmed.

All JUSTICES concur.