CLARENCE ARNOLD CALL, appellee, v. MURIEL GENEVIEVE CALL, appellant.

No. 49726.

(Reported in 98 N.W.2d 335)

1176

SEPTEMBER 22, 1959.

T. Eugene Thornton and Frederick G. White, both of Waterloo, for appellant.

Buckmaster, Van Metre & Lindeman, of Waterloo, for appellee.

HAYS, J.—Acting under section 598.14, Code of 1954, the trial court modified a prior divorce decree by changing the

custody of three minor children from the mother to the father. The mother appeals.

I.   Section 598.14 provides:

"When a divorce is decreed, the court may make such order in relation to the children * * * as shall be right.

"Subsequent changes may be made by it in these respects when circumstances render them expedient."

■    Such proceedings are reviewable de novo and, as the guiding star is the welfare of the children, the statute is liberally construed, with considerable discretion being lodged in the trial court. Prandy v. Prandy, 241 Iowa 1050, 44 N.W.2d 379; Dawson v. Dawson, 249 Iowa 588, 88 N.W.2d 117.

II.   Plaintiff and defendant were married in 1942. Three boys were born to this union, now age 10, 9 and 8 respectively. In 1953 the parents separated, the mother and the boys remained in Connecticut where they were living. The father came to Iowa, which formerly had been their home. In 1954 the father filed for a divorce in Black Hawk County, Iowa, and asked for equitable relief. The mother appeared and cross-petitioned, asking custody of the children. The children at all times were in Connecticut. An agreement between the parents was reached, which was incorporated in a divorce decree to the father, whereby the mother was given custody of the children and support money for them. In October 1956 the boys came to live with their father in Iowa (whether on a temporary or permanent basis is in dispute). In February 1957 the mother came and took the boys back to Connecticut. The father immediately petitioned the Black Hawk District Court for a modification of the original decree by granting him custody of the children. The mother appeared personally and contested the same, the children at all times being in Connecticut. Modification was decreed.

Two propositions are involved. One jurisdictional, the other factual.

■    III.   First, the jurisdiction. All concede the divorce is valid. Appellant contends the custody provision in the decree is void, due to the children being beyond the jurisdiction of the court; hence there is no jurisdiction to modify the same. The trial court held it lacked jurisdiction in the first instance but

could now modify, due to a change of domicile of the children. If it had jurisdiction in the original instance, it had in the second with regard to domicile of the children. Van Gundy v. Van Gundy, 244 Iowa 488, 56 N.W.2d 43.

■■ Did the Black Hawk District Court have jurisdiction to award child custody in the original proceedings? We hold it did. These entire proceedings are based upon chapter 598, Code of 1954, entitled Divorce and Annulment of Marriages, and are strictly statutory. The only parties thereto are the husband and wife. Only as an incident thereto, Kell v. Kell, 179 Iowa 647, 161 N.W. 634, does the court, *under this chapter*, have authority to make a custodial order. The proceeding is not an adversary action as to the children but merely a determination of custodial rights between the parents. Personal service was had upon the defendant, she appeared and by cross-petition sought the very relief, and obtained it, which she now says the court was without jurisdiction to make. In no divorce proceedings is the child of the marriage ever a party to the same, and we are unable to see, under the instant facts, why the court does not have the same jurisdiction that it would have if the children were somewhere in the state. Had there been service upon the mother by substituted service and no appearance, a different situation would be presented.

Appellant cites and relies upon Kline v. Kline, 57 Iowa 386, 10 N.W. 825, 42 Am. Rep. 47, and Boor v. Boor, 241 Iowa 973, 43 N.W.2d 155, as did the trial court. We fail to see wherein these cases are in any way pertinent to our question. Both are proceedings for habeas corpus involving the custody of children. The two basic requirements in such proceedings are (1) actual presence of the children before the court (they are parties in the proceedings), and (2) facts which show that the welfare of the child requires that action by the court is called for. Whether a divorce decree of another state, wherein the custody was awarded, had jurisdiction is, in effect, immaterial, as this state, or other states, deals with children *actually within its borders* as it deems best for the children. See also Helton v. Crawley, 241 Iowa 296, 319, 41 N.W.2d 60, 74, wherein it is stated, " 'This jurisdiction does not depend on the domicile of the parents, neither does it stand by, for a judgment of another state.' "

The question there, other than the welfare of the children, was the extraterritorial effect of a foreign decree of custody. Such is not the instant case. We may concede that under the facts of this case the court, in a habeas corpus proceedings, would lack jurisdiction to decree custody of the children then in Connecticut.

IV. Holding the court had jurisdiction to make the original custody award, do the facts show a change of conditions such as to sustain a change thereof? In reviewing such action of the trial court, though it be de novo, weight should be given to the court's findings because of his better opportunity to see the witnesses and weigh the testimony. Blundi v. Blundi, 243 Iowa 1219, 55 N.W.2d 239; Shepard v. Gerholdt, 244 Iowa 1343, 60 N.W.2d 547.

Much of the record is not in conflict. The father, shortly after the divorce, married a widow with two children, a boy, age 16, a girl, age 15. They reside in a three-bedroom, modern home in Jesup, Iowa, which is owned by his mother. It is convenient to church and school. He intends to build a new home immediately. His wife has been employed outside the home but expects to quit such work. It appears that this wife is a very fine lady and that, during the time the children in question were in the home, there was a growing affection between her and the children. The mother also appears to be a fine lady and has real affection for the boys and they for her. She lives in the home of her parents, with them, and while there is some evidence of differences between the two women, it does not appear to be too serious. Their home is likewise modern and satisfactory. The boys appeared to be happy in both homes.

In October 1956, after a phone call by the mother to the father, he went to Connecticut and brought them back to his home in Jesup. As to what was said in that conversation is in conflict. His version is that she demanded $80 per month for rent, $20 a week and groceries; that upon being told he could not afford such amounts she said " 'Come and get the kids. If you don't come and get them I will put them in a home' "; that she also said she was being forced to leave her parents' home. The record shows that for a time thereafter she did live outside the parents' home. Her version is that she made the call because

she was ill and wanted him to come and get them temporarily. When asked what was meant by "temporarily" she said it might be a year or two or three or more. When he arrived at the Connecticut home, all the boys' belongings, including their toys, except a Victrola, were packed and she had their school records for a transfer to another school. He states that while in Connecticut she told him that he could better care for the boys than she could and that they needed a father. He took with him to Connecticut a release of custody, which an attorney had prepared for him. This, he said, he gave to her and she agreed to sign it and mail to him. She denies all knowledge of a release.

Upon returning the boys to Iowa, the boys entered the public schools and appear to have made a good adjustment and were doing satisfactory work. They attended the Methodist church and Sunday school with their father and stepmother. This fact appears to be the disturbing element between the parents. She was a Catholic, they were married in the Catholic church and, as usual, it was agreed by him that any children of the marriage should be reared in the Catholic faith. At some stage of their married life he became a Catholic convert. Apparently, when he returned to Iowa after the separation, he reverted to his Protestant faith. The decision of the boys to attend the Methodist church seems to have been somewhat their own decision. At least, no exercising of pressure appears in the record.

Early in February 1957 the mother, without notice to the father, came to Iowa, met the boys on their way to school and took them back to Connecticut where they have since resided. The record shows that during the time the children were in Iowa, they kept in touch with their mother. She, as a witness, gave her reason for taking the children back to Connecticut that for some eight weeks she had not heard from them and was worried. However, letters written by her to them show that as recent as January 28, 1957, she had heard from them. Not a word appears in her letters to them, and to the father, showing any thought other than that the children were to remain with him and go to school. She also stated, after the letters were produced, that she had recently heard that the boys were not being reared in their right church and that this had some effect on her coming to Iowa for the boys.

The trial court found that she had released the boys to their father and had, in effect, abandoned them; that boys of this age needed the influence and discipline of their father; that the home provided by him was satisfactory and that the advantages he could give them were such as to call for a change of custody; that, while he recognized the necessity of religious training in the home, mere differences between Christian faiths were not important enough to be the determining factor in a child-custody matter.

We are inclined to go along with the trial court.—Affirmed.

All JUSTICES concur except THORNTON, J., who takes no part.