Marta L. Wesch Stingley, Plaintiff-Appellee, v. Lawrence E. Wesch, Defendant-Appellant.

Gen. No. 10,795.

Fourth District.

December 29, 1966.

Raymond Lee, Jr., of Tuscola, for appellant.

Ryan & Heller, of Mattoon (Willis P. Ryan, of counsel), for appellee.

CRAVEN, P. J.

The parties to this proceeding were married in August of 1962. Plaintiff obtained a divorce in July of 1964. By the terms of the decree of divorce she was awarded custody of Alan E. Wesch, the only child of the marriage. Alan was born in March of 1963. The defendant husband was ordered to make certain support payments and was granted rights of visitation at certain times specified in the decree. There was no default in the ordered payments and rights of visitation were exercised except for certain periods when the defendant was on duty with the National Guard.

From the date of the divorce until September of 1965 plaintiff and the child lived with her parents in Oakland, Illinois. The defendant resided with his parents in Hindsboro, Illinois, some six miles distant. On the occasions when Alan was with his father he would also be with the paternal grandparents and on occasion the paternal grandparents would take the child, by agreement, for visits in their home.

On September 4, 1965, the plaintiff left the residence of her parents, taking the child with her. She went to the

Chicago area. The next day the maternal grandfather returned the child to his home in Oakland. The stated reason, according to the plaintiff, was to prevent animosity and to permit of visits by the defendant and his parents. On September 18, 1965, plaintiff married Wayne Stingley. They presently reside in Kankakee, Illinois, where Stingley, a college graduate, is employed as a teacher. One child, Dawn, resides in this home. The record indicates Wayne Stingley to be of the Negro race.

Alan has remained with the maternal grandparents since September 5, 1965, except for short periods with the father at the home of the paternal grandparents. On one occasion he visited his mother in her home and twice a month or so she was in Oakland to see the child. In February of 1966 the father sought custody by filing a petition for modification of the decree.

The petition alleged the fact of plaintiff's subsequent marriage and further alleged that since that remarriage she "has not sought to exercise the right of care, custody and maintenance" of the child but that, on the contrary, she has placed the child in the care, custody and control of the maternal grandparents. At the hearing both parents of the child testified as to their desire to have custody. So did the maternal grandparents. The paternal grandparents expressed a desire to have their son have custody and in turn live with them.

There is evidence in the record as to the suitability of the homes of the maternal and paternal grandparents and no disqualification as to custody is indicated by reason of unsuitable moral climate or inadequate economic resources in either home.

The court specifically found "that neither the mother nor the father are unfit persons and that both desire the custody of the child." The decree was modified and custody awarded to the maternal grandparents. In so doing

the court found this to be for the best interests of the child, "for his personal benefit and for social and economic reasons." This appeal is from the order modifying the original decree.

We are thus presented with the question of determining whether there were sufficient changes in circumstances so as to warrant modification of the decree, and then if such are found to exist to pass upon the decree of modification.

 It is well-settled that a decree fixing custody is final as to the conditions then existing and should not subsequently be changed unless on altered conditions or on material facts existing at the time of the decree but unknown to the court. Even then such modification must be governed by the best interests of the child. ILP, Divorce, § 217, and cases there cited. Bulandr v. Bulandr, 23 Ill App2d 299, 162 NE2d 585 (1st Dist 1959). In the last-cited case the court used language equating change of circumstances as required for modification with parental unfitness. Clearly the change in circumstance must be substantial, must relate to the welfare of the child, and as the court there said (at 303, 162 NE2d at 587):

> "Nothing short of a hearing relating to unfitness and the interests of the child and a finding thereon is adequate support for an order changing custody. . . ."

██ ██ The facts in this case show that the mother consented to the child's being cared for by the maternal grandparents. This, under the evidence, did not constitute abandonment as that term is generally used. Rather the mother acquiesced in their custody and her reason was stated to be to make effective the defendant's right of visitation and because of the fact of her subsequent remarriage. The facts here as to relinquishment of custody are far different from those found in People ex rel. Curley

v. Porter, 23 Ill App 196, relied upon by the appellant. See also 24 Am Jur2d, Divorce and Separation, § 824, and cases there cited. The remarriage of the mother is not of itself a sufficient reason for changing an order of custody. 24 Am Jur2d, Divorce and Separation, § 821. The fact of the remarriage may, however, have a bearing on change of custody. See Serotzke v. Serotzke, 335 Ill App 485, 82 NE2d 375 (1st Dist 1948).

■ We conclude that the relinquishment of custody and the subsequent remarriage of the mother were sufficient changes of circumstances as to warrant an examination into the custody question in the sense of a hearing to determine the necessity of a change in custody.

■ An annotation in 43 ALR2d 363 suggests the matters for consideration on a petition for change of custody upon remarriage of either the mother or the father. In Fountaine v. Fountaine, 9 Ill App2d 482, 133 NE2d 532 (1st Dist 1956), the court held that in determining the question of custody as between a Negro father or a Caucasion mother the question of the racial characteristics of the children was not decisive. Clearly, therefore, question of the race of a stepfather would have no significance in this proceeding. In this connection, see the annotations to the Fountaine case in 57 ALR2d 678.

By determining there were sufficient changes in circumstances to warrant a hearing to determine the question of custody, it does not follow that custody may be awarded to the maternal grandparents when both parents sought custody and both were found fit to have custody.

■ ■ The rights of the parent are superior to those of any other person when the parent is a fit person to have custody of his children. This is and for years has been the rule in Illinois. Custody to persons other than a parent is considered only after a finding of parental unfitness or

unwillingness or undesirability necessitating a placement other than to the parent. Cormack v. Marshall, 211 Ill 519, 71 NE 1077 (1904) ; Sullivan v. People ex rel. Heeney, 224 Ill 468, 79 NE 695 (1906) ; Jarrett v. Jarrett, 348 Ill App 1, 107 NE2d 622 (3d Dist 1952) ; Horn v. Horn, 5 Ill App2d 346, 125 NE2d 539 (3d Dist 1955). While custody is to be determined by a consideration of all the circumstances of the particular case and the court must be mindful that the welfare of the child is the chief consideration, placement other than to parents who are willing and fit is not within the rule that recognizes the superior right of the parent. Cf. Painter v. Bannister (Iowa), 140 NW2d 152 (1966).

The decree awarding custody to the maternal grandparents and concurrently finding the parents to be fit is reversed. This cause is remanded to the circuit court of Coles County for further proceedings to determine custody as between the parents consistent with the views herein expressed.

Reversed and remanded with directions.

SMITH and TRAPP, JJ., concur.