OPAL IRENE MAIKOS, appellee, v. JOHN J. MAIKOS, appellant.

No. 52310.

(Reported in 147 N.W.2d 879)

January 10, 1967.

Rehearing Denied April 3, 1967.

Neiman, Neiman & Stone, of Des Moines, for appellant.

James D. McKeon, of Des Moines, for appellee.

Larson, J.—On August 6, 1960, the district court of Polk County, Iowa, granted appellee, Opal Irene Maikos, a divorce from appellant, John J. Maikos, and, in accordance with the prayer of her amended petition and a stipulation signed by her,

awarded custody of their two children, Jeffrey Paul, born March 22, 1956, and Susan Teresa, born April 13, 1958, to the appellant, who then resided in Bridgeport, Connecticut. On July 2, 1962, appellee filed an application to modify the divorce decree, but no hearing thereon was had until December 15, 1965. Pursuant to the order of January 6, 1966, modifying the decree changing custody of the children and granting appellee $20 per week child support, the father appeals.

Appellant contends that under the law and the facts the trial court was in error in granting this application and that its order and judgment should be reversed. We agree.

I. This proceeding being in equity, our review is de novo. Burrell v. Burrell, 256 Iowa 490, 127 N.W.2d 78; Rule 334, Rules of Civil Procedure. We, of course, give weight to the trial court's findings, but are not bound thereby. Rule 344(f)(7), R. C. P.

II. The provisions of a divorce decree as to custody of minor children are final as to the circumstances then existing, and they may be modified only where it is proven by a preponderance of the evidence that subsequent conditions have so changed that the welfare of the children requires such modification. Section 598.14, Code of 1962; Burrell v. Burrell, supra; Heater v. Heater, 254 Iowa 586, 118 N.W.2d 587; Simpkins v. Simpkins, 256 Iowa 989, 129 N.W.2d 723; Welch v. Welch, 256 Iowa 1020, 129 N.W.2d 642; Herron v. Herron, 258 Iowa 1052, 141 N.W.2d 562.

III. The burden to prove such a change is required is upon the applicant. Heater v. Heater, Herron v. Herron and Welch v. Welch, all supra; Pearson v. Pearson, 247 Iowa 437, 74 N.W.2d 224.

Not every change in circumstances is considered sufficient for a modification unless its enforcement be attended by positive wrong or injustice as a result of the changed conditions. Beyerink v. Beyerink, 240 Iowa 45, 35 N.W.2d 458; Dow v. Dow, 240 Iowa 145, 35 N.W.2d 853; Heater v. Heater, supra; Smith v. Smith, 257 Iowa 584, 133 N.W.2d 677.

IV. The changed circumstances must also be such as were not within the knowledge or contemplation of the trial court

at the time of the original decree. Brott v. Brott, 257 Iowa 377, 131 N.W.2d 829; Pearson v. Pearson and Simpkins v. Simpkins, both supra. And the prior decree necessarily determined the fitness of the party to whom the children are awarded at that time, and as to the circumstances then existing. Dow v. Dow, supra; Huston v. Huston, 255 Iowa 543, 122 N.W.2d 892; Smith v. Smith and Welch v. Welch, both supra. It has been held that, where the children have been so placed and where they are receiving good treatment and moral training, they should not be removed therefrom, except for the most cogent reasons. Jensen v. Jensen, 237 Iowa 1323, 1332, 25 N.W.2d 316.

V. These propositions are well settled and established in this jurisdiction. In fact, both parties cite and rely upon the same authorities. Their application to the evidence at hand is often, as here, a very difficult problem. Each case must be considered upon the record presented, and a careful review thereof is called for here. Being aware of the trial court's advantage in seeing and hearing the witnesses, the basis of the error, if any, should be more or less apparent. That seems to be the case here.

We note in its findings of fact: "4. The court finds that at the time of the rendition of the original decree that the defendant was employed and capable of providing for the wants of the minor children, but that the plaintiff was destitute and emotionally out of control, and that the children were physically in the State of Connecticut, the defendant having removed them from the State of Iowa prior to the filing of the divorce action. 5. That in November of 1964 the present wife of the defendant found herself in domestic difficulties with the defendant, and did leave her husband, returning to the State of Iowa and this jurisdiction with the two minor children, Jeffrey and Susan, and did abandon them here by leaving them with the plaintiff, in whose custody they have remained to the present time."

Appellant vigorously denies there is sufficient evidence in the record to sustain such findings in paragraph 5, and in fact the record clearly shows that, without his knowledge or consent, his present wife and these children were abducted from his home in Connecticut by her father, brought to the State of Iowa and, over the objections of his present wife, these two children were

surrendered to the appellee. He also states that the record evidence will not support paragraph 7 of the findings, "That to deny the application would restore the children into a home and under the control of the present wife of the defendant, *who has already on one occasion abandoned them.*" (Emphasis supplied.) We shall presently review this evidence, but first we should review the record chronologically.

VI. The parties were married in West Des Moines, Iowa, on September 25, 1954, and lived in Des Moines until February of 1955 when they moved to Bridgeport, Connecticut, where these two children were born. In May 1959 the parties came to Des Moines either for a visit or to obtain employment. On June 12, 1959, after a family squabble, the father took the children and returned to Bridgeport, where they resided until November of 1964.

On June 8, 1959, appellee filed her petition for divorce in Polk County, Iowa, but had some delay in getting service on appellant, and the divorce was not granted until August 6, 1960. In that period she had experienced some personal difficulties and it appeared she was unable, physically or mentally, to care for the small children, the boy then being three years old and the girl a little over a year old. She amended her petition to ask that the father be awarded the children's care and custody, and signed a stipulation to that effect. Thereafter, the divorce decree was granted and the court, being fully advised, awarded the care and custody of Jeffrey and Susan to the father.

Subsequently both parties remarried. Appellee has a child by her second marriage. Appellant has two children by his second marriage, and prior to November 1964 this family resided in an apartment in Bridgeport. Until his marriage to his present wife in 1961 the father alone took care of the children, worked and re-established himself financially. He has at all times furnished an adequate and clean home for them and they were well cared for. The appellee married well and until November 1964 had lived with her husband and child in a two-room efficiency apartment in Des Moines.

On July 1, 1962, when appellant and the children were in Des Moines on a visit, appellee, claiming fraud and duress was

practiced in obtaining the original divorce decree, filed a petition for a writ of habeas corpus and had notice served upon appellant, who promptly returned to Bridgeport with the children. On July 2, 1962, appellee filed an application to modify the decree of divorce, but no hearing was held thereon until December 15, 1965.

On July 12, 1962, the petition for habeas corpus was granted, although appellant and the children were not present at the hearing. Therein the court purported to change the custody of the children to appellee, but no attempt was made to enforce that decree and the children continued to live with the father in Bridgeport. Apparently appellee abandoned this procedure and chose to pursue the remedy of modification. While the validity of the habeas corpus decree is not relied upon here, a copy of that decree evidently played a part in the effort to get appellee physical possession of the children.

In November 1964, after a family quarrel of some sort, the father of appellant's present wife learned thereof from her sister, drove to Bridgeport and, unknown to appellant, took his daughter, appellant's wife, and all the children back to Des Moines, Iowa. Over the protests of appellant's present wife, these two children were taken to the home of appellee. When his wife advised him of the situation by telephone, appellant came to Des Moines and filed a petition for a writ of habeas corpus to recover possession of the children. At the hearing thereon on March 25, 1965, the court took custody of the children, continued the matter, and left them with the appellee-mother until a full hearing could be had on her pending application for modification of the divorce decree. On December 15, 1965, hearing was had and the court's decree, entered on January 6, 1966, granted appellee's application, changed custody of the two children to the mother, and provided support money for their maintenance. The sole issue in this appeal, therefore, is whether the court erred in granting this modification pursuant to the showing made by appellee.

The record discloses that appellant, in spite of his dire financial circumstances, faithfully cherished and provided for the children through infancy, that he had steadily improved his

financial circumstances, maintained an adequate and clean home in Bridgeport, and that the children regularly attended school and church. The record fully supports a finding that the children were loved and had affection for their father and new "Mommie". On the other hand, the mother, her husband and child, had lived in a nice two-room apartment in Des Moines until she obtained these children. Then they moved into a new three-bedroom house. Her financial, moral, and physical circumstances had greatly improved and she was able to care for these children. Admittedly, the circumstances of each party had improved. Were these changed circumstances sufficient to make expedient a modification as to custody? We think not.

VII. It is quite clear to us that appellant at no time abandoned these children. The record discloses his present wife did not leave him as a result of the November 1964 quarrel, and that she loves and wants Jeffrey and Susan to remain with them in Bridgeport. It is also abundantly clear her father was under the impression these children were the source of domestic trouble in appellant's home and undertook to relieve that situation by delivering them to their mother without legal authority. The present Mrs. Maikos testified as follows:

"Q. If Jeffrey Maikos and Susan Maikos were returned to the physical possession of their father, they would be living with you in Bridgeport? A. Yes, sir.

"Q. What would be your feeling toward having them in your home? A. Very good.

"Q. Would you have any resentment toward them because they were not your own children? A. No, sir.

"Q. Prior to last November a year ago, what did they call you? A. Mother, Mommy, Mom."

In answer to the question as to what they called her the day before the hearing she said they called her "Mommie", and to the question of "How do you feel toward them", she answered, "I love them very much."

As to the circumstances surrounding her trip to Iowa with her father in November 1964, she said she called her sister in Des Moines and said she wanted to come home for a visit, and that her father with a brother-in-law came after her and insisted

on bringing Jeffrey and Susan back to Iowa. In answer to the question, "What was said at that time with regard to bringing Jeffrey and Susan back to Iowa?" she replied, "My father said he was bringing them back because he had this document, this written permission from Oppie [the mother] to bring them back. I told my father I couldn't bring them back. As far as I was concerned, Johnny still had full custody of the two children. He had papers showing that Oppie had custody and he also had a written permission for him to bring the kids back here; and he said they were going and I said no they weren't. He said don't tell them they are going to Oppie." Her father denied he kidnapped these children, but admitted he took his daughter and all the children to Des Moines, driving all night to get there.

As to the circumstances of delivery of the children to the mother, Mrs. Maikos testified her father took them to Betty Sage's house, where she stayed while in Iowa. The appellee-mother came over to get the children and, as to those circumstances, she said: "Q. What was the reason for your allowing Opal to take Susan and Jeffrey? A. I didn't allow it.

"Q. How did she get them? A. Just took them.

"Q. She just took them away from you? A. Yes.

"Q. You let her? A. Yes.

"Q. What was the reason for that? A. She wanted them.

"Q. And you didn't? A. Yes, I did."

She said, "I had no choice. * * * She came to get them and I was told I wasn't the mother, the legal mother, that she was and they was allowed to have them."

"Q. Who told you that? A. My father." She further stated: "She [Opal] told me she had a legal document and she had custody." Appellant's present wife further denied making any statement that these children were the reason for domestic quarrels with appellant and that she was going to bring them back to Des Moines so Opal could have them. There was testimony corroborating and denying this evidence, but in any event we are satisfied it was her father that insisted on bringing the children back to Iowa, that appellant's wife objected to the mother's taking them from her possession, and that there was no abandonment of them by either appellant or his wife. We are further

satisfied there is and always has been love and affection between his present wife and the children and that none of them desired this separation. When they were taken by the mother, it appears "Jeffrey started screaming and hollering he wanted to go back to his father", and Susan started crying.

It is true the children were somewhat disheveled and dirty when they arrived in Des Moines after a hasty departure from home and an all-night trip, but under the circumstances that evidence of a lack of proper care is of little consequence. Most of the evidence as to their care and cleanliness was to the contrary.

VIII. The material change of circumstances appellee attempted to show the court is a change in herself and her financial circumstances. The record is silent of any substantial proof on her part that the children will be better off with her in Des Moines than they were in Connecticut. Although the children are too young to judge conditions for their welfare, they did indicate their desire to return to their home in Bridgeport. We said in Mason v. Zolnosky, 251 Iowa 983, 989, 103 N.W.2d 752: "True, the welfare of the child is of greatest importance; but when this has once been decided, and a custodial order made, it will not be overturned unless a material change in circumstances has occurred. Any other procedure would leave the matter open to the most undesirable result of endless litigation and continual uncertainty."

In Welch v. Welch, supra, 256 Iowa 1020, 1024, 1025, 129 N.W.2d 642, we said: "We have held time and again child custody and support provisions of a divorce decree are final as to the circumstances then existing. Such provisions will be modified only where it is proven by a preponderance of the evidence that subsequent conditions have so changed that the welfare of the children requires, or at least makes expedient, such modification. In matters of this kind the child's welfare is the controlling consideration. [Citations] Of course not every change of circumstances is sufficient basis for modification of a divorce decree. We have said several times a decree will not be modified unless its enforcement will be attended by positive wrong or injustice as a result of the changed conditions. Pearson v. Pearson, supra,

and citations; Jensen v. Jensen, supra; Dawson v. Dawson, 249 Iowa 588, 592, 88 N.W.2d 117, 119.".

■ Here it is obvious the circumstances as to the father's home had changed for the better, the facilities for rearing and caring for the children were adequate and proper, and were as contemplated by the trial court in its original decree. There appears to be no reason to make this change in custody except perhaps, as presently situated, the mother could supply more of the luxuries and non-essentials than the father. This is not the test. If it were, children could be shuttled back and forth depending upon the instant financial status of the parents. All authorities agree this is not the guide in the determination of what is best for the child's welfare. Heater v. Heater, supra, 254 Iowa 586, 118 N.W.2d 587.

IX. The remaining question then is, would this change be expedient? We are satisfied it would not be expedient to approve the method used by the mother to obtain possession of these children, or to reward her with their custody at the expense of the father who did not neglect or desert them as infants. Factual matters subsequent to the original divorce do not appear to be of such character as to require a change in the original decree, and since that decree is final as to those circumstances, no change in custody should be decreed. Burrell v. Burrell, supra, 256 Iowa 490, 127 N.W.2d 78, and citations. Clearly, conditions have not deteriorated so as to make any change expedient. There is no showing that the father has failed the children and, as tending to prove he has sufficient space for this family, we were told in oral argument that he now has a four-bedroom house to accommodate them.

X. Basically, then, here we have only the fact that appellee has rehabilitated herself and married advantageously. She now also has an acceptable home for the children. The situation is much like that we considered in Dow v. Dow, 240 Iowa 145, 150, 151, 35 N.W.2d 853, where we said: "The only subsequent circumstance in this case is the mother's remarriage and the establishment of a [suitable] home. We know from the record she remarried three days after the divorce decree [here it was within a month]—a decree that gave custody of Larry to the father and

a decree which bears her written approval as to form. * * * We do not know when the home in Davenport was purchased but it was sometime during the four-month period after the divorce and before the application for modification was filed. While precedents are not of great value when the superior question concerns a child's welfare, we have held that a trial court was right in not changing an order that gave the father custody, upon a showing that the mother had remarried and established a home and had financial ability to support the child. Daniels v. Daniels, 145 Iowa 422, 124 N.W. 169; Freese v. Freese, supra. * * * The evidence is overwhelming that the boy is being properly cared for under the original order that placed the boy in his father's custody and temporarily in his aunt's home. It seems to us far too soon to change the original order of custody without some clear showing that the changed order will result in a distinct improvement in the boy's welfare. No such showing is made in this case."

Also, to a like effect, see Beyerink v. Beyerink, Jensen v. Jensen, Pearson v. Pearson, Smith v. Smith and Welch v. Welch, all supra.

XI. Perhaps the most perplexing problem before us in this troublesome case is the period of time these children have now been physically absent from appellant's home. Over two years have passed since they were wrongfully taken from his home and have been physically present in appellee's home. It is unfortunate that they must be moved again. However, it is our feeling that these periods of delay are not to be charged to appellant who resides in Connecticut. He promptly made a good faith, although fruitless, effort to recover possession of the children, but the court rejected his plea at that time. Under these conditions the lapse of time should not operate to deprive him of the custodial right and privilege given him by the original trial court. While the paramount question is not the rights of either parent, and frequent shifting of the children from one home to another is abhorred, when we take into consideration what is right and just under the revealed circumstances leading up to the appellee's physical possession of them, we conclude the children's best interest will be served by rejecting any change in their legal

custody at this time. The love of a devoted father and his wife toward these children overshadows any possible physical advantages of appellee's fine home or her understandable desire to now have the custody, love and affection of her children. In this case we must hold the equities are with the father. Having carefully reviewed the record, we must hold the mother has failed to show the required change of circumstances to justify a modification of the original divorce decree. The father under this record is entitled to retain the custody and control of Jeffrey and Susan, and the modification order of the district court is reversed. —Reversed.

THORNTON, SNELL, STUART, MASON, RAWLINGS and BECKER, JJ., concur.

GARFIELD, C. J., dissents.

MOORE, J., takes no part.