Vernita EDDARDS, Appellant,

v.

Henry SUHR, Appellee.

No. 54588.

Supreme Court of Iowa.

Dec. 15, 1971.

Laird & Laird, Waverly, for appellant.

James W. Coddington, Waverly, for appellee.

LeGRAND, Justice.

This habeas corpus matter reaches us after a long and acrimonious fight between parents over the custody of their two minor daughters. If, as each professes, they are interested in the welfare of their children, the contest should have been resolved long ago; instead it now drags on toward the end of its fourth year. We are asked to somehow make order out of the chaos which these people have created for the two girls, who are now eight and seven years old respectively.

The trial court found the best interest of the children would be served by leaving them with defendant. Plaintiff—their mother—appeals. We affirm.

In 1967, plaintiff started a divorce action in Bremer County against defendant. When it became apparent a dispute would ensue over custody of the children, plaintiff dismissed her suit and departed summarily for Nevada with a male "friend." She took the two girls with her, neither

notifying defendant of her intention to do so nor letting him know where the children were after she had established her new residence.

Thereafter plaintiff consulted an attorney about receiving a divorce in Nevada. In the meantime defendant hired private detectives; discovered where his children were living, and, playing the same game his wife had earlier indulged in, took them by stealth and quickly removed them from that state. All this happened on the very day plaintiff filed her petition for divorce there.

Subsequently, and while the children were physically in the state of Iowa, the Nevada court entered a decree of divorce in which it awarded custody of the two young girls, then five and four years of age respectively, to plaintiff. Defendant does not contest the jurisdiction of the Nevada court to grant a divorce. Indeed he relied on its validity when he married his present wife in 1968. He does claim, however, there was no jurisdiction to enter a custodial decree because the children were then in Iowa and not subject to the authority of the Nevada court.

■ We recognize the serious jurisdictional question raised by defendant. We are handicapped in our consideration of this issue because neither party has pled or proved Nevada law. Under familiar and long-established principles we may not take judicial notice of foreign law in the absence of such pleading and proof. Rule 94, Rules of Civil Procedure; Berghammer v. Smith, 185 N.W.2d 226, 230 (Iowa 1971).

■ Under these circumstances we cannot properly determine the question of jurisdiction over the children at the critical moment—the time suit was started, rather than the date the decree was entered. 27B, C.J.S. Divorce § 303b, pages 427, 432; 24 Am.Jur.2d, Divorce and Separation, section 775, page 882; Boor v. Boor, 241 Iowa 973, 980, 43 N.W.2d 155, 157 (1950). However, we need not pursue the juris-

dictional question—admittedly a close one—nor attempt to reconcile the seemingly conflicting statements in some of our previous cases concerning the effect of a foreign decree involving child custody. See McKee v. McKee, 239 Iowa 1093, 32 N.W.2d 379 (1948); Helton v. Crawley, 241 Iowa 296, 41 N.W.2d 60 (1950); Boor v. Boor, 241 Iowa 973, 43 N.W.2d 155 (1950); Call v. Call, 250 Iowa 1175, 1178, 98 N.W.2d 335 (1959); Nesler v. Nesler, 185 N.W.2d 799, 801 (1971).

We believe the record shows such a change of circumstances that the trial court's decree should be affirmed on that basis, regardless of the considerations of jurisdiction and comity. We therefore postpone, as we did in Sampson v. Sampson, 189 N.W.2d 614, 615, 616 (Iowa 1971), a determination as to whether we may disregard the custodial provisions of a valid divorce decree of a sister state in absence of such a change.

In fact this case bears marked similarity to Sampson v. Sampson. Here, too, the trial court decided the matter as though a change of circumstances need not be shown, relying principally on statements in Helton v. Crawley, 241 Iowa 296, 319, 41 N.W.2d 60, 74 (1950) and Call v. Call, 250 Iowa 1175, 1178, 98 N.W.2d 335, 336 (1959). We have already conceded some inconsistency in our own previous announcements on this question, and authorities from other states are equally irresolute. In Sampson we discussed the troublesome issues involved—comity, res judicata, full faith and credit—when the custody established by a decree in one state is sought to be defeated in another. It is unnecessary to repeat what we said there or to do more than refer to the many authorities which that opinion sets out as illustrative of the dissimilar results reached in the different jurisdictions.

■ Virtually all agree, however, that a foreign custodial decree may be disregarded upon showing a substantial change of circumstances since its entry. We place our holding on that unassailable principle.

From the date defendant returned his children to Iowa—February 9, 1968—until July 1, 1970, when the habeas corpus petition was filed, plaintiff made no effort to regain their custody. In the meantime they had become settled with their father and his new wife. Then, after almost two and a half years, plaintiff started this action challenging his right to keep them.

■ In custody cases all other considerations must defer to the rule that the best interest of the child is determinative. Rule 344(f) (15), Rules of Civil Procedure; Nesler v. Nesler, 185 N.W.2d 799, 801 (Iowa 1971); Halstead v. Halstead, 259 Iowa 526, 531, 144 N.W.2d 861, 864 (1966).

■ Habeas corpus proceedings, when involving the custody of children, are equitable in nature and are reviewed de novo. Sampson v. Sampson, supra, 189 N.W.2d at 614, and cases cited.

■ We should acknowledge one more precept—the change of circumstances relied on to avoid a custodial decree must be substantial and must relate to the children, not the parental parties to the original decree. Such changes must "demand" or at least make it "expedient" that custody be determined anew. Dow v. Dow, 240 Iowa 145, 150, 35 N.W.2d 853, 856 (1949); Heater v. Heater, 254 Iowa 586, 587, 118 N.W.2d 587, 589 (1962); Huston v. Huston, 255 Iowa 543, 555, 122 N.W.2d 892, 900 (1963); Maikos v. Maikos, 260 Iowa 382, 384, 147 N.W.2d 879, 881 (1967).

■ We believe this record justifies a denial of the habeas corpus petition. Plaintiff argues the only change of circumstances is the remarriage of the parties, which will not alone suffice. Stone v. Stone, 212 Iowa 1344, 1346, 235 N.W. 492, 493 (1931); Toney v. Toney, 213 Iowa 398, 400, 239 N.W. 21, 22 (1931); Boquette v. Boquette, 215 Iowa 990, 992, 247 N.W. 255 (1933) and Metzger v. Metzger, 224 Iowa 546, 551, 278 N.W. 187, 190

(1938). See also Annotation, 43 A.L.R.2d 363, 399.

Most of these cases deal with factual situations in which a reduction in payments required by a decree was asked because of a subsequent remarriage. In such cases it is easy to agree that remarriage alone should not entitle one to escape obligations already incurred in favor of new ones voluntarily assumed.

But in considering the custody of children remarriage of the parents never stands "alone." It inexorably dictates change for the children. It introduces to their lives a new "parent" and, frequently, an unfamiliar sibling group. It sets new living patterns affecting the social, moral, educational, religious and economic lives of the minors. Nor can we close our eyes to the friction remarriage frequently brings to the rights of visitation vested in the other parent.

While we have apparently applied the same remarriage rule to the custody question in Freese v. Freese, 237 Iowa 451, 453, 22 N.W.2d 242, 244 (1946); Dow v. Dow, 240 Iowa 145, 151, 35 N.W.2d 853, 857 (1949); and York v. York, 246 Iowa 132, 137, 67 N.W.2d 28, 31 (1954), it is significant that in these cases we made statements which surely suggest it is not to be rigidly enforced in such circumstances. In the Freese case the trial court refused to consider the question of custody on the "narrow ground" of the effect of a prior divorce decree, and we affirmed a decision which treated the case instead "as though there had been no previous adjudication as to custody." In Dow v. Dow, we conceded that the "mother's remarriage and the establishment of a home is *some* change in the circumstances as they existed at the time of the divorce." (Emphasis added.) And in York v. York we referred to the mother's remarriage as "material but not controlling." See also 24 Am.Jur.2d, Divorce and Separation, section 821, pages 933, 934; Guldeman v. Heller, 151 N.W.2d 436, 440 (N.Dak.1967); Stingley v. Wesch,

77 Ill.App.2d 472, 222 N.E.2d 505, 507 (1966); Allen v. Allen, 243 Miss. 23, 136 So.2d 627, 632 (1962).

As we have repeated many times, it is always the best interest of the child which must determine whether the change in circumstances warrants new custodial provisions. On this issue the remarriage of one or both divorced parents with the inevitable resulting effects on the lives of the children may or may not be sufficient to require a change of custody. Each case must be resolved on its own peculiar facts.

■ Here we believe a change from the Nevada decree is dictated. From 1968 to 1970, when she started this habeas corpus action, plaintiff was content to let the children stay with their father in his new home. She paid little attention to them during that interval. Her gifts were negligible, her communication with them sporadic, her visits infrequent and short lived. She felt "no obligation" to help support them. Only after *her* affairs were apparently in order did she demand what she says was rightfully hers some two-and-a-half years earlier. We reach the inescapable conclusion she has been far more concerned with her own welfare than with theirs.

In the meantime the children had become rooted here. They were well cared for and established a routine of life which should not be lightly upset. We have said the status of children should be quickly fixed and, thereafter, little disturbed. Halstead v. Halstead, supra, 259 Iowa at 531, 144 N.W.2d at 864. When parents selfishly refuse to permit this, the resulting problems become almost insoluble.

We had this to say of a similar question in Maikos v. Maikos, supra, 260 Iowa at page 392, 147 N.W.2d at page 885:

"Perhaps the most perplexing problem before us in this troublesome case is the period of time these children have now been physically absent from appellant's home. Over two years have passed since they were wrongfully taken from his home and have been physically present in appellee's home. It is unfortunate that they must be moved again. However, it is our feeling that these periods of delay are not to be charged to appellant who resides in Connecticut. *He promptly made a good faith, although fruitless, effort to recover possession of the children, but the court rejected his plea at that time. Under these conditions the lapse of time should not operate to deprive him of the custodial right and privilege given him by the original trial court."* (Emphasis added.)

■ But here, unlike Maikos v. Maikos, the long residence of the children with their father went unchallenged. For more than two years plaintiff did not even *seek* their return. Under these circumstances plaintiff's apparent indifference—or at least her long acquiescence in defendant's custody—is entitled to serious consideration in reaching a conclusion. Scheffers v. Scheffers, 242 Iowa 563, 571, 47 N.W.2d 157, 161 (1951).

We decline to take the children from an environment which we *know* worked to their advantage in favor of one where their experience may—or may not—be the same. We refuse to subject them to that risk.

We cannot close without criticizing the long delay in disposing of this case. As the trial court remarked, the record is sparse. The whole case was tried in less than two hours. The record was not filed until five-and-a-half months after the notice of appeal was filed, even though it comprises only 36 pages exclusive of the certificates and the index. The case was submitted to us 13 months after the trial court's decree was filed. In some cases that interval would be unobjectionable; but when the custody of young children is involved and when the record is as short as this one, we see no excuse for the delay. It is fair neither to the parties nor to this court to bring custody cases to us when at best our decision must be based on "cold"

circumstances and on facts long since moot.

This is perhaps best demonstrated by statements during oral argument indicating plaintiff, apparently unwilling to abide the decision of the court whose help she sought, has again removed the children from the state.

 While this indeed conjures up both legal and practical problems in the enforcement of the decree and while we might in some cases dismiss an appeal upon a showing the alleged illegal restraint had terminated, we do not treat child custody matters the same as ordinary habeas corpus proceedings. We therefore decide the appeal on the record before us, basing our conclusion on circumstances existing at the time of trial.

For the reasons heretofore stated, we believe the trial court reached the correct result and the judgment is affirmed.

Affirmed.

All Justices concur.