ELBERT SCHEFFERS, appellant, v. ROZELLA SCHEFFERS (now ROZELLA BUCK), appellee.

No. 47831.

(Reported in 47 N.W.2d 157)

APRIL 4, 1951.

Life & Davis, of Oskaloosa, for appellant.

Dickinson & Dickinson, of Des Moines, for appellee.

GARFIELD, J.—On February 27, 1947, plaintiff-Elbert Scheffers was granted a divorce from defendant-Rozella Scheffers for the cause commonly known as cruel and inhuman treatment. (Section 598.8(5), Codes, 1946, 1950, says "such inhuman treatment as to endanger the life * * *.") Pursuant to stipulation of the parties the decree awarded Elbert custody of Freddie, only child of the marriage, born December 23, 1945. On April 26, 1950, Rozella filed application asking that the decree be modified by awarding her custody of Freddie. Plaintiff resisted the application and in turn asked that rights of visitation given defendant by the decree be limited.

Evidence pertaining to the applications was heard on October 4, 1950. The judge who granted the divorce was then deceased. On October 9, decree was entered sustaining defendant-Rozella's application by awarding her the boy's custody. Of course plaintiff-Elbert's application was denied. Plaintiff has appealed from the decree of October 9 and contends it was error to sustain Rozella's application. It is not argued it was error to deny Elbert's application for limitation of Rozella's visitation rights and we give that part of the decree no attention. See rule 344(a)(4)(Third), Rules of Civil Procedure.

The stipulation of the parties, incorporated and approved in the original divorce decree, after providing that plaintiff shall have custody of the child with defendant's right of visitation, states: "In the event of the remarriage of plaintiff father of said child or the removal of said child from the home of the grandmother or if the grandmother becomes incapacitated to the point where she cannot care for said child either of said events shall be ground for a review of the matter of custody * * * by the court."

While custody of the child was originally awarded plaintiff it was apparently contemplated by the parties and the court that plaintiff's mother (then sixty), with whom plaintiff made his home, would have much of the responsibility of the child's care. It is not claimed Freddie has been removed from the home of the grandmother or that she cannot care for him. It does appear, however, that plaintiff (then about twenty-eight) remarried a girl then seventeen, on April 2, 1950, and the new wife has lived with plaintiff, his mother and Freddie in the mother's home in Pella.

Defendant was also married again, in Sioux Falls, South Dakota, five days after the divorce, to Leonard Buck whose mother is a sister of plaintiff's mother. Since May 1950, defendant and Buck have lived in a six-room rented house in Toledo, Iowa, where Buck has a good job for a feed company with average gross pay of about $129 a week, a 1950 Ford car which is paid for, and $300 or $400 of government savings bonds. A girl was born to defendant and Buck August 7, 1949.

The above facts, coupled with the fact defendant had no home, income or job when the divorce was granted, are mainly

relied upon by her as sufficient change of circumstances since the divorce decree as to render "expedient" (see Code section 598.14), for the welfare of the child, the desired change of custody. The trial court took this view. We feel compelled to disagree.

■ Under our repeated holdings and the authorities generally a divorce decree is ordinarily final as to the circumstances then existing. Jensen v. Jensen, 237 Iowa 1323, 1324, 25 N.W.2d 316, 317, and citations; Nichols v. Nichols, 239 Iowa 1173, 1177, 34 N.W.2d 187, 189; Beyerink v. Beyerink, 240 Iowa 45, 48, 35 N.W.2d 458, 460, and citations. Consequently upon a hearing for modification of a decree little if any consideration is usually given testimony at the original trial. Such a hearing should not be a retrial of the original divorce action. Nichols v. Nichols, supra. Here, however, the parties joined in introducing the two-hundred-page transcript of the original trial. We have therefore considered it as well as the testimony at the subsequent hearing, much of which relates to incidents before the divorce was granted.

Trial of the divorce action in February 1947 started as a contested one. Defendant had filed an answer and a cross-petition in which she also asked a divorce. Plaintiff's witnesses were cross-examined by defendant's counsel. Near the conclusion of the testimony negotiations for a settlement were had which resulted in the stipulation above referred to. Defendant then withdrew her answer and counterclaim. A little additional testimony was offered by plaintiff. Defendant offered no evidence. The court stated he thought there was sufficient evidence to justify giving plaintiff a divorce in view of the withdrawal of the contest.

Plaintiff and defendant were married September 5, 1942. Defendant was then seventeen, plaintiff about three years older. Until October 1946, they lived in Pella except that plaintiff was away in the Navy for nearly eight months commencing in November 1942. Substantial testimony in the original trial tends to show defendant was unduly familiar with other men, especially with Leonard Buck, her present husband. She occasionally kept company with another young man during plaintiff's absence in the Navy and stayed out at times as late as one or two o'clock.

There is also evidence defendant used liquor, sometimes to excess, as well as profane and obscene language toward plaintiff, his mother and the baby. Plaintiff also used liquor and profanity. In the October 1950 hearing defendant made an effort to refute or minimize testimony against her in the original trial.

There seems to have been no serious difficulty between the young couple before October 1946, when they moved from Pella to Milford, Iowa, near the farm in southern Minnesota occupied by Leonard Buck's mother. Leonard's car and trailer were used to move the Scheffers' belongings from Pella. Then for about two weeks, while plaintiff was painting the house they had rented in Milford, defendant and little Freddie stayed at Bucks'. After the Milford house was ready for occupancy Leonard moved in with the Scheffers.

A week before Christmas 1946, the three Scheffers and Leonard Buck, in the latter's car, went to Pella for a visit with plaintiff's mother. On Christmas night these four, with another young couple, attended a picture show in Pella. When the baby got to crying defendant handed him to Leonard to take out of the theater to his car. Defendant afterward left the show and went to the car with Leonard and the baby.

After the show plaintiff walked to his mother's home and defendant, the baby and Leonard came there in the car a little later. Plaintiff then told Leonard he had better take his belongings and leave. Plaintiff and his mother testify defendant then said, "By God if he goes I go too" and plaintiff replied "You can suit yourself on that." Defendant and Leonard deny this and say that plaintiff, after telling Leonard he had better leave, told defendant "That goes for you too." In any event, defendant and Leonard with their belongings left in the latter's car. Defendant went to the home of her sister in West Des Moines where she stayed until the divorce trial in February 1947. Leonard lived in a rooming house in Des Moines during this two-month period and kept company with defendant.

There is some dispute as to what effort defendant made to take the year-old child with her when she left on Christmas night. Defendant testifies plaintiff kept her from taking him. Plaintiff and his mother say defendant did not make much if any effort to take the baby. Plaintiff admits defendant did not have

568

much chance to take the child since he picked it up himself. It is also admitted defendant said she would return with the sheriff the next day and get the child. She did consult an attorney the next day who told her the only way she could get the baby would be to sue for divorce. Upon the attorney's advice she went to Milford, apparently with Leonard, and got her belongings and those of the baby.

From the time of their marriage five days after the divorce until they moved to Toledo in May 1950, defendant and Buck lived mostly in Des Moines in a trailer or in southern Minnesota near the Buck farm. Defendant visited Freddie fifteen to twenty times—she says at least once every three months—in the three years and seven months between the two trials. Twice in the summer of 1947 Freddie visited his mother and Leonard for three days at the trailer camp in Des Moines. The divorce decree gives defendant the right of visitation at reasonable times at the grandmother's home and to have the child with her three days each month within the jurisdiction of the court.

Defendant contends the custodial provisions of the original decree are temporary only and not a final adjudication. Consequently she says she is not required to show changed circumstances in order to be entitled to relief but only that the best interests of the child will be served by awarding his custody to her. The argument is, in effect, that the question of custody should be determined as an original proposition as if no divorce had been granted. Basis for this contention is the language of the stipulation and decree above-quoted that plaintiff's remarriage "shall be ground for a review of the matter of custody * * *."

█ In view of defendant's concession that the welfare of the child is the vital consideration in determining the right to his custody little attention need be given defendant's argument that the custodial provisions of the decree are only temporary. However, we think defendant claims too much for the quoted language. It does not purport to say that plaintiff's remarriage shall be ground for an award of custody to defendant, assuming such a provision would be valid, but only for a review of the matter of custody. There has been no attempt to deny defendant such right of review. The quoted provision adds little if anything to

the language of Code section 598.14 which authorizes subsequent changes in the custodial provisions of a decree "when circumstances render them expedient."

■ It is no doubt true, as defendant asserts, that a divorce decree may provide for only temporary custody of a child. Voy v. Voy, 241 Iowa 673, 41 N.W.2d 869, and Farrell v. Farrell, 190 Iowa 919, 181 N.W. 12, each involves such a decree. In Wood v. Wood, 220 Iowa 441, 262 N.W. 773, a supplemental decree provided for only temporary child custody.

Farrell v. Farrell, supra, upon which special reliance seems to be placed, is not in point here. There a divorce decree in favor of the wife clearly provided for the child's custody only temporarily with his grandmother, reserving the right to make a permanent order of custody. When the wife applied for such order the trial court arbitrarily refused to hear her.

■ The weakness of defendant's case, as we see it, is not that there are no changed circumstances since the divorce but that circumstances have not so changed that the welfare of the child "demands" (as several of our decisions say) or renders "expedient" (as Code section 598.14 states) the desired change of custody. Defendant is doubtless in better material position to give Freddie a home now than when the divorce was granted. While this is a changed circumstance it does not entitle defendant to relief unless the best interests of the boy would thereby be served. Dow v. Dow, 240 Iowa 145, 151, 35 N.W.2d 853, 857; Jensen v. Jensen, supra, 237 Iowa 1323, 1327, 25 N.W.2d 316, 318; Neve v. Neve, 210 Iowa 120, 230 N.W. 339.

■ ■ We are not persuaded it is for his best interests to award Freddie's custody to defendant. We have held so many times that the child's welfare is the controlling consideration in a controversy of this kind (as stated, defendant so concedes) it is unnecessary to cite the decisions. See, however, Paintin v. Paintin, 241 Iowa 411, 415, 41 N.W.2d 27, 29, and citations; Herr v. Lazor, 238 Iowa 518, 527, 528, 28 N.W.2d 11, 16, and citations; Freese v. Freese, 237 Iowa 451, 458, 22 N.W.2d 242, 246.

It is not shown that the home of plaintiff and his mother is less desirable for the child than it was when the divorce was granted. In fact it appears it is fully as desirable as it was

then. Subsequent to the divorce an indoor toilet and bath have been installed. The home is not incumbered. Several disinterested witnesses testify it is clean and well-kept.

Plaintiff is regularly employed as a plumber at $50 to $60 a week. He earned $40 to $50 a week before the divorce. It is true disability compensation of $41 a month was discontinued in March 1949. However, plaintiff is in better health now than when the divorce was granted. He no longer uses liquor. Several witnesses speak well of plaintiff and his mother. Nothing derogatory to plaintiff's new wife is shown.

The father and grandmother have taken good care of the child. There is no reason to think they will not do so in the future. Freddie has grown strong, healthy and contented. He has attended Sunday school regularly. Strong bonds of affection have grown between the father, grandmother and child during the four years since defendant left plaintiff and the child. To take the child from his present home and place him with defendant would be an experiment which should not be made under the showing here.

That the grandmother, like everyone else, is now four years older than when she undertook the major part of Freddie's care and that plaintiff recently married a girl so much younger than he, coupled with the facts defendant remarried and now has a home and financial ability to support the child, are not such changes in circumstances as require a change of custody for the child's welfare.

We have approved this statement which is applicable here: " 'When a child is legally placed in a home where it receives good treatment and moral training, it should never be removed from that home, except for the most cogent reasons.' " Jensen v. Jensen, supra, 237 Iowa 1323, 1332, 25 N.W.2d 316, 321; Wiggins v. Wiggins, 239 Iowa 1279, 1297, 34 N.W.2d 607, 616. Much to the same effect are Jensen v. Sorenson, 211 Iowa 354, 364–366, 233 N.W. 717, and cases there cited.

We feel it would be fundamentally wrong to take this child from the home to which it has become so attached and to award his custody to defendant and her present husband. It is quite clear defendant, while she was plaintiff's wife, preferred her present husband to her child. She was content to leave plaintiff

and the baby when he was a year old and needed a mother's loving care more than he does now. The baby was sick then. The father and grandmother cared for him until he was well.

Defendant made practically no effort to obtain the child's custody for nearly three and one-half years after the separation. That period has now increased to more than four years. Of course plaintiff's right of custody was not revocable at defendant's wish. While it is to her credit that she has sought her boy's custody even belatedly she has no just claim thereto either in law or morals.

Our conclusion finds support in Dow v. Dow, supra, 240 Iowa 145, 35 N.W.2d 853; Wiggins v. Wiggins, supra, 239 Iowa 1279, 34 N.W.2d 607; Freese v. Freese, supra, 237 Iowa 451, 22 N.W.2d 242; Jensen v. Jensen, supra, 237 Iowa 1323, 25 N.W.2d 316; Elliott-Mault v. Elliott, 329 Mich. 544, 46 N.W.2d 373.

The Dow and Freese decisions are specially applicable here. This language of the trial court in the Freese case which we there approve may be repeated here (page 460 of 237 Iowa, page 247 of 22 N.W.2d) : "* * * motherhood is something with respect to which it is very difficult to take a holiday; it can be taken only with the incidental formation of new and substituted attachments. To break such cannot be done lightly."

With instructions to dismiss defendant's application for modification of the decree the cause is—Reversed and remanded.

All JUSTICES concur except MANTZ, J., not sitting.