**Marian G. BETZEL, Appellant,**

v.

**Charles M. BETZEL, Appellee.**

**No. 53101.**

Supreme Court of Iowa.

Dec. 10, 1968.

McCarthy & Hart, Davenport, for appellant.

Norman M. Peterson, Davenport, for appellee.

BECKER, Justice.

In this action plaintiff-mother seeks modification of a divorce decree entered July 16, 1964 giving defendant-father custody of the couple's five minor children.

On March 11, 1966 after full hearing, the trial court dismissed plaintiff's application for modification thus continuing custody in the father on a permanent basis. We affirm.

The parties were married in 1946. Defendant was studying to become a dentist. Plaintiff was a registered nurse. When Dr. Betzel received his degree the couple moved to Davenport where they made their home. Five children were born of the marriage; Pamela in March, 1953; Mark in June, 1954; Maurice in May, 1956; Mathew in March, 1958 and Melissa in February, 1961.

The marriage did not prosper. Mrs. Betzel had trouble with her husband's mother. The parents had difficulty disciplining and managing the children. Plaintiff also developed a serious drinking problem. Both parties sought psychiatric advice with the idea of helping the marriage work. Mrs. Betzel consulted Dr. French, a doctor of medicine specializing in psychiatry, from time to time from 1958 to 1962. Dr. French mentioned stormy intervals in the marital relationship during this period.

When Dr. French's services were no longer available, Mrs. Betzel consulted Dr. Cabrera in Moline, Illinois and saw him every other week for a several-month period. She was voluntarily hospitalized in a psychiatric ward for a five-week period. She was discharged without psychosis. Dr. Betzel took her home and they continued to try to make the marriage work. About this time the oldest boy, Mark, also needed and received psychiatric help.

The marriage continued to deteriorate. Plaintiff started the divorce action in January, 1964. Defendant cross-petitioned for divorce. Both sought custody of the children. After plaintiff commenced the divorce action but before trial she began consulting Dr. Erikson, also a psychiatrist, who treated her at that time and for some time after the divorce. The case was tried in July of the same year. The court granted plaintiff a divorce on grounds of cruel and inhuman treatment, but also found:

"The plaintiff, Marian G. Betzel, is not at this time mentally or physically able to properly care for and rear said minor children, and that it would not be for the best interests of said children to be awarded to her custody now. The court also finds that the defendant, Charles M. Betzel, is a fit and proper person to have the care, custody and control of said minor children and is better able at this time to provide them with a good and suitable home where they will be properly reared and educated."

Custody was awarded to the father with the further additional provision: "This custody, however, is subject to reasonable visitation rights on the part of the plaintiff. In connection with the custody the Court specifically orders and makes a part of this decree that the question of custody come on for review after the expiration of one year from the date hereof upon the application of the plaintiff, at which time the Court will consider whether the mental and physical condition of plaintiff has improved, and at which time the Court will make such order as to custody as the circumstances shall warrant."

After one year, plaintiff made the instant application stating she is now a fit and proper person to have custody of her minor children.

At the modification hearing plaintiff testified in her own behalf and also called twelve witnesses, including Dr. Erikson, to show improvement in her mental and physical condition. Defendant also testified, produced eight witnesses to show the children were being well cared for in his custody and introduced the psychiatric testimony from the first trial. Part of the trial court's findings at this hearing were:

"The court finds from the evidence that Marian G. Betzel is now living a productive and beneficial life as a nurse and that her physical and mental health has improved. Dr. Erikson testified that in his opin-

ion she is capable of caring for her children. He had expressed a similar opinion when he testified at the divorce trial. The evidence also shows that the five children in question are well adjusted; that they are improving in their school work; that their behavior, both in and out of school, is better than it was at the time of the divorce; and that they are provided with proper supervision and control and are living in a clean, comfortable and well-regulated home. The court's prime responsibility, of course, is to determine this matter for the best welfare of the children.

"* * * Both are responsible, conscientious persons whose only fault appears to be that they are entirely unable to continue in the marriage relationship which would have provided their children with the love, affection and attention of both parents. The change in Mrs. Betzel from the time of the divorce until the time of the hearing on her Application for Modification was dramatic. Her appearance, her attitude and her demeanor all have improved greatly, and she is certainly to be commended for the manner in which she has adjusted to the changed circumstances in which she found herself when the Decree of Divorce was entered."

Other findings will be alluded to later. Our study of the record impels us to agree with the trial court's findings and conclusions. In order not to extend this opinion unduly, we refer to the record in the opinion only as much as is necessary to explain our basis for agreement.

I. We are first faced with a legal problem raised by the parties. Defendant contends the July 11, 1964 decree was a final decree as to all matters and plaintiff has the burden to show a change of circumstance which impels, or at least makes expedient a change of circumstance, at this time. Alex v. Alex, Iowa, 161 N.W.2d 192, opinion filed September 17, 1968.

Plaintiff treats this application as going to modification of a decree which was not final as to child custody. This affects the question as to whether she must show a change of circumstance since the original decree was entered. The matter is of importance to the central issue of custody and also to the collateral issue of attorney's fees which will be treated in Division III.

We have clearly held trial courts have the power to provide for temporary custody of a child. Scheffers v. Scheffers, 242 Iowa 563, 569, 47 N.W.2d 157, 160 states: "It is no doubt true, as defendant asserts, that a divorce decree may provide for only temporary custody of a child. Voy v. Voy, [241] Iowa [673], 41 N.W.2d 869, and Farrell v. Farrell, 190 Iowa 919, 181 N.W. 12, each involves such a decree. In Wood v. Wood, 220 Iowa 441, 262 N.W. 773, a supplemental decree provided for only temporary child custody." 24 Am. Jur.2d, Divorce and Separation, section 808, p. 919, and 27B C.J.S. Divorce § 316, p. 504.

By statute the court always retains jurisdiction to redetermine custody problems. Section 598.14, Code, 1966 reads: "Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right."

In Harwell v. Harwell, 253 Iowa 413, 416, 112 N.W.2d 868, 871 we said: "Provisions of the original decree are final as to circumstances then existing, and the matter will not be relitigated in the absence of a showing of substantial changes affecting the parties and the welfare of the children. Paintin v. Paintin, supra, 241 Iowa 411, 415, 41 N.W.2d 27, 29, 16 A.L.R.2d 659, and citations.

"* * * We point out that the statute says a decree may be modified 'when circumstances render [it] expedient.' We have apparently held this to mean a 'change' in circumstances."

Of course, if the decree is not final as to custody, the original judgment has not

been made as a finality and the court is not concerned with the burden of showing change in circumstances since the temporary order was entered. This is the point of plaintiff's position.

■ In determining whether the trial court's decree was temporary only or permanent (in the sense necessitating a showing of change of circumstances), we consider the decree as final as to the circumstances then existing unless the language clearly shows a contrary intent. 24 Am. Jur.2d, Divorce and Separation, section 809, p. 919 succinctly states the reason for this approach:

" * * * [A]t the time the court grants a divorce it may not be able to make a final determination of the issue of custody and may therefore award custody temporarily, or make a probationary arrangement, with the expectation that the application for a final award will be heard at a later date. Likewise the court may enter an order for temporary custody when the plaintiff takes a voluntary nonsuit. However, the Court, when granting a divorce, should not make a mere temporary order for custody when this can be avoided. A temporary order in such a case is apt to cause hardship, unhappiness, and instability in the lives of the parents and children."

In this case the court provided that: "the question of custody came on for review after the expiration of one year from the date hereof *upon the application of the plaintiff,* at which time the Court will consider whether the mental and physical condition of plaintiff has improved, and at which time the Court will make such order as to custody as the circumstances shall then warrant." (Emphasis added.)

■ The court says nothing as to disposition if plaintiff fails to file application. Presumably, the custody award would then become permanent. We think this language was not sufficient to make this a temporary award of custody. As indicated in Scheffers v. Scheffers, supra, and Mit-

valsky v. Mitvalsky, 191 Iowa 8, 179 N.W. 520 the decree as drawn simply provides for a continuing jurisdiction already provided for by statute. The decree differs from Jackson v. Jackson, 248 Iowa 1365, 1369, 85 N.W.2d 590, 593 where the decree below provided:

" 'Jurisdiction of this matter is retained by this court and hearing shall be held on the 11th day of April 1955 * * * and shall thereupon enter a further decree in relation to future alimony, custody of said minor children, costs of this action and plaintiff's attorney fees.' The matters postponed by the court are such integral parts of the case that the postponement of hearing and future decision as to said matters are part of the case."

■ Under the language employed by the trial court here we hold the custody provisions were permanent subject only to modification on showing of change of circumstances. However, in all of these cases where child custody is the issue, the best interest of the children is the first and governing consideration. On that issue the question of whether the former order was permanent or temporary is secondary. Cf. Scheffers v. Scheffers, supra. In this case the same result is necessary whether we treat the custody provisions in the first order as permanent or temporary.

II. Turning to the record, we find a couple who were having serious and apparently irreparable difficulties with their marriage. The wife was suffering from a mental condition described by Dr. Erikson as a psychoneurosis anxiety state and depressive reaction which he declared in his later testimony to be a paranoid state, not a paranoid personality. Dr. French diagnosed Mrs. Betzel's condition as a personality trait disturbance when she saw her in 1958 and in 1960 the diagnosis was a psychoneurotic depressive reaction. Dr. Cabrera's diagnosis was paranoid personality with symptoms of depression. We shall not attempt to analyze the differences found in the psychiatric opinions. Suffice

to say the opinion advanced by Dr. Cabrera indicated much more serious problems than did the opinions of Dr. Erikson and Dr. French. Dr. Cabrera's opinion indicated Mrs. Betzel's condition could worsen with increasing responsibilities and stressful situations. He testified: "In my opinion the stressful situations for Mrs. Betzel have to do with home responsibilities, the care of the children and the care of the home. In fact, I predict that perhaps she could function better in a job where she could work, and in fact, the hospital. She would function better if she were doing a specific task."

Mrs. Betzel's progress during the year following the divorce confirmed Dr. Cabrera's prognosis. She went to work at her chosen profession in the delivery room of a major hospital, assumed and properly performed serious responsibilities, rented and managed her own apartment and in general carried on a satisfactory existence with the family responsibilities removed. She now feels she can safely assume the care and management of her children and should do so.

During the same year's interval Dr. Betzel and the children, by all accounts, were also doing much better. Before the divorce the children were ill-mannered, ill-disciplined and the home was poorly managed. In the year following divorce Dr. Betzel, with the help of a housekeeper, restored order. The children are now well-mannered, disciplined, better adjusted, doing well in school and have achieved a happy, normal existence.

The evidence of Mrs. Betzel's fine recovery and the evidence of the satisfactory condition of the rest of the family under Dr. Betzel's management are both abundant. This brings us to the basic issue of which the trial court was clearly aware. The decision must not be made on the basis of what is for the best interest of the parents or what the relative rights of the parents might be. These are factors that must be faced and considered in every case of this type, but the controlling issue is, what is for the best interest of the children. Rule 344(f) 15, Rules of Civil Procedure.

We review once more some of the other principles to be considered in cases of this type. While it is true we have frequently recognized a presumption that the mother is ordinarily best fitted to care for children of tender years, Patzner v. Patzner, 250 Iowa 155, 93 N.W.2d 55, this is not a strong presumption and it yields to other considerations. Utter v. Utter, Iowa, 155 N.W.2d 419. In a hearing for a change of custody from the father to the mother we do not indulge in any presumption or inference that a child would be better off in the custody of its mother. Huston v. Huston, 255 Iowa 534, 555, 122 N.W.2d 892. Where the child (or children) has been legally placed in a home where it receives good treatment and moral training, it should not be removed except for most cogent reasons. Scheffers v. Scheffers, 242 Iowa 563, 47 N.W.2d 157, supra. A change in custody will not be awarded to reward or punish a parent. Alex v. Alex, Iowa, 161 N.W.2d 192, opinion filed September 17, 1968.

We need not consider other similar principles. Each case must be decided de novo and in accordance with its own peculiar facts. Here we had a situation where the mother was unable to cope with the family problems. The court awarded custody to the father but added an invitation to the mother to reopen the custody question in one year. Upon reopening, it refused to change custody. The evidence shows three factors which sustain the trial court, (1) at time of original trial the mother was in no condition to take care of these children; (2) with the marital situation stabilized and the care of the children assumed by the father, the mother made a fine recovery; (3) during the recovery period the father demonstrated his ability to care for and rear the children in a highly satisfactory manner. Under the circumstances it makes little difference whether

the July 1964 decree is treated as temporary or permanent. In either event we would not be justified in disturbing the present situation where one parent is doing a commendable job, for an unproven change to the other parent whose ability to handle the matter equally well has not been shown. The presumption in favor of the mother must give way to the facts.

Plaintiff argues the children should not be deprived of their mother's love, care and affection. Neither should they be deprived of the father's love, care and affection. The children are innocent losers in this situation. The law is powerless to correct such unhappy results. In Bell v. Bell, 240 Iowa 934, 938, 38 N.W.2d 658, 660 where the father was seeking custody from the mother, after noting our statute, section 668.1, Code, 1966, makes *both* parents the natural guardians of their minor children, we said: "Doubtless the statute assumes the continuance of the normal family relation. It contemplates joint custody—a sort of joint tenancy as distinguished from a tenancy in common. The statute breaks down when as here joint custody becomes impossible and controversy arises between parents.

"When this happens the one seeking to take actual custody from the other has the burden of showing some superior claim based on his ability to minister, not *equally,* but *more,* effectively to the child's well-being."

 We are convinced the children's interest is best served by the continued care, supervision, control and custody remaining in their father. With this definite pronouncement we do not mean to impugn the good faith of the mother in any way. Her recovery has been dramatic and satisfactory. We have no doubt her love and desire for the children is genuine. But these factors cannot be allowed to upset what is now a demonstrated stable, healthy family situation for the children. We therefore affirm the trial court.

III. The sole remaining issue concerns allowance of attorney's fees. After careful consideration we have concluded the July decree was final. Plaintiff is, therefore, seeking modification of a final decree. We have held no attorney's fees are allowable where modification of a final decree is the issue. Addy v. Addy, 240 Iowa 255, 36 N.W.2d 352, and Arnold v. Arnold, 258 Iowa 850, 860, 140 N.W.2d 874. Plaintiff's application for allowance of attorney's fees is denied. Costs are assessed against plaintiff. Affirmed.

All Justices concur, except SNELL and MASON, JJ., who concur in the result.

LeGRAND, J., takes no part.