Claudia SHIPLEY, Appellant,

v.

Gregory L. SHIPLEY, Appellee.

No. 54023.

Supreme Court of Iowa.

Dec. 15, 1970.

Dippel & McCann, Council Bluffs, for appellant.

Porter, Heithoff, Pratt & Reilly, Council Bluffs, for appellee.

UHLENHOPP, Justice.

The question in this divorce appeal is whether the trial court rightly decreed that the paternal grandparents of a small girl should have her custody and that the

question of custody should be subsequently reviewed.

Plaintiff and defendant were married in 1964 when she was 19 and he was 20. In 1965 plaintiff gave birth to a daughter, Stacia Lynn Shipley.

Defendant was employed at various jobs and earned the wages of the ordinary working man. It seems he is not very natty about his personal appearance. He is also given to temper outbursts, although they are not accompanied by dangerous physical violence. At work one time, he was caught stealing money from another man's clothing. Nothing came of this incident. Defendant is a hard worker and a devoted father, and during the marriage was a faithful husband. Now that the divorce has been decreed, he is subject to military service.

Defendant's parents, aged 56 and 54, have a greenhouse in connection with their home in Council Bluffs, Iowa. Previously, defendant's mother worked away from home; more recently she has worked in the greenhouse. Defendant's grandmother, aged 73, also lives in that city.

Plaintiff herself came from a broken home. She apparently married before she was emotionally ready to do so. Defendant's mother was upset when the parties married, but this does not appear to be the real difficulty. While defendant's earnings were not large and plaintiff had some financial justification for wanting to earn money, plaintiff's insistence on working outside the home appears to be founded mainly on other reasons. Plaintiff really was not ready to settle down and rear a family. She wanted to be out and around, and most of the time during the marriage she held one job or another outside the home.

More serious, plaintiff does not seem to be devoted to defendant. On various occasions during the marriage, she stayed out late at night under the pretext of attending meetings connected with her employment. Actually, however, she stayed considerably later than the meetings. Her conduct with men has been suspect. For a number of months prior to the divorce she lived in an apartment with a young woman who is single, and on several occasions men were entertained in the apartment under conditions which were not discreet, to say the least. Relating the details of those incidents would serve no useful purpose, but the incidents indicate questionable conduct to a marked degree.

The evidence also indicates that plaintiff was not really ready for motherhood. Stacia Lynn spent many of her waking hours at the residence of defendant's grandmother and later with defendant's parents at the greenhouse. She ate most of her meals at those places. She would be picked up at home in the morning and be brought back at night. After the parties separated in November of 1967, the child was with sitters whom plaintiff employed, and later with the grandparents at the greenhouse about four-fifths of the time. Shortly before trial, and in anticipation of it we fear, plaintiff took the child back and employed sitters again.

The controversy between plaintiff and defendant over plaintiff's employment outside the home and her conduct with the opposite sex grew worse as time passed. Plaintiff was thoroughly dissatisfied with defendant, and defendant was thoroughly upset with plaintiff's conduct. Arguments and bickering ensued. Plaintiff appeared more interested in a life outside the home than in one with the family.

Eventually, defendant had an opportunity for a promotion involving transfer to another city. The parties visited that city, but plaintiff did not care for it. Defendant accepted the job there, but plaintiff did not follow and took the apartment with the young woman who has been mentioned. Much of plaintiff's questionable conduct occurred at this apartment.

On December 5, 1967, plaintiff filed her petition in this suit asking for a divorce, child custody and support, and a property

division. Defendant filed a cross-petition containing a similar prayer, except that he did not ask for child support. The case was tried on the merits and submitted, and the trial court rendered a Decree of Divorce. After the findings and conclusions, the trial court decreed:

"It is hereby ordered and adjudged that Plaintiff is hereby granted an absolute divorce from the Defendant above named, subject only to the limitation against remarriage within one year from the date hereof; * * *"

The decree also granted custody of Stacia Lynn to her paternal grandparents and to plaintiff with the grandparents to have the child during the week and plaintiff to have her weekends, required child support and alimony to be paid by defendant, divided the property, granted plaintiff costs including attorney fees, and authorized issuance of execution against defendant. The decree then provided that custody of the child "be reviewed by this Court six months from the date hereof, to-wit, July 17, 1969, or as soon thereafter as the same can be considered by the Court for the purpose of determining the progress of said custodial matter at said time in light of the best interests of the child at said time." Jurisdiction was expressly reserved.

Plaintiff took an appeal, limited to the issue of custody of Stacia Lynn.

The appeal poses two problems. Is the decree right as to custody? Is the decree appealable?

I. *Custody.* This kind of suit tries a trial court's soul—what to do for the long range welfare of the child? Here is a young daughter and a young mother. A small girl needs a mother. A father is occupied with his employment and is not very well situated anyway to take a daughter through the stages of growing up. The child's grandparents may be ever so upstanding, but they are a generation twice removed; by the time this child is 20, these grandparents will be in their seventies if still here.

Yet this mother herself has not grown up. She regards home life as dull. She finds her spouse completely uninteresting. The impression we have is that this young woman is too immature for the child's welfare. Yet she has a mother's love for the child.

Confronted with these opposing considerations, the trial court appears to have done the best it could. It held the child should go back to the paternal grandparents, but it did not close the door permanently. It provided for a second examination of the custody issue at a later time.

In custody cases we presume initially that a small child's welfare is best served by placing the child with the mother. The circumstances of a particular case, however, may indicate otherwise. Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 121 N.W.2d 216. Moreover, a permanent arrangement for the child should normally be decreed. Temporary provisions with an order for later review, while permissible, should be employed with caution in order to reduce the chance of trauma which attends a subsequent transplant of the child. Betzel v. Betzel, 163 N.W.2d 551 (Iowa).

While we are not altogether free from doubt, upon considering the evidence in this case and giving the trial court's findings the deference to which they are entitled—the trial court actually saw and listened to these people—we conclude the decree should stand. We think the trial court was mindful of the natural preference for the mother and for that very reason ordered the subsequent review in the hope of a change in plaintiff. We further believe that on subsequent review the trial court should have in mind our disapproval of arrangements amounting to split custody which create uncertainty in the child's mind as to which place is home. McKay v. McKay, 253 Iowa 1047, 115 N.W.2d 151. On remand the trial court should promptly hold the supplemental hearing ordered in the decree. A "material change of circumstances" will not be prerequisite to altera-

128

tion of the decree by the trial court. The supplemental decree will be subject to appeal the same as a modification decree.

II. *Appealability.* Defendant says the decree is not appealable because the trial court retained jurisdiction to review custody. We think decrees of this kind, including and notwithstanding the provision for subsequent review, are appealable under the type of divorce proceeding we have in Iowa.

Divorce procedure in this country, so far as we are concerned here, is of two main kinds: trials leading to interlocutory divorce orders which later ripen into decrees, and trials leading directly to decrees. 27A C.J.S. Divorce § 161(2) at p. 611, § 184 at p. 771. Supplementary remedies are usually provided: proceedings for temporary support pending trial, and proceedings to modify decrees as subsequent circumstances indicate. 27A C.J.S. Divorce § 205 at p. 887; 27B C.J.S. Divorce § 277 at p. 195.

The Iowa statute which we have had to this time clearly gives us the second kind of divorce procedure in which the trial leads directly to decree. Chapter 598 of the Code, relating to divorce, provides for the petition, the counterclaim, and the decree. Code, 1966, §§ 598.3, 598.10, 598.14. Nowhere in the chapter is provision made for an interlocutory order to ripen into a decree. Instead the main purpose of interlocutory divorce orders—hoped-for reconciliation—is provided by prohibiting either party's remarriage within a year except to the other. § 598.17. Additional provision is made for temporary support orders pending trial, and also for decree modifications "when circumstances render them expedient." §§ 598.11, 598.14. The statute is not materially altered by our new divorce act so far as the problem here is concerned. 63 G.A. Second Session, chs. 1266, 1267.

The Iowa rules of civil procedure furnish an orderly method for carrying out the divorce statute. The rules provide for making up the issues by petition, answer, counterclaim, and reply, for trying the is-

sues, and for rendering the decree. Nowhere do the rules authorize an interlocutory order for divorce. Rules 70, 72, 73, 176, 179, Iowa Rules of Civil Procedure.

Consequently, after a divorce case is pleaded, tried on the merits, and submitted by the parties for decision, the adjudication, under our procedural scheme, is a decree which takes effect. This is true although the decree may contemplate future changes, as a decree in equity not infrequently does. Indeed, the flexibility of its decree is one of the glories of equity, but the decree is nonetheless in effect. 30A C.J.S. Equity § 599 at p. 666 ("A court of equity may exercise a broad discretion in framing its decrees in order to adapt the relief granted to the circumstances of the particular case, but it should adjust the relief in a manner which is just and equitable and affords protection to the rights of all parties, *and which finally determines the rights and claims of the parties relating to the subject matter.*" Italics added).

The conclusion which courts have reached in jurisdictions with procedure similar to ours is that decrees like this one are appealable. This is said in Gibson v. Gibson, 156 Ark. 30, 245 S.W. 32 (headnote 1): "That the court, in making final divorce decree containing provisions as to custody of the children, retains jurisdiction of the subject-matter in so far as the custody of the children is concerned, does not affect the finality of the decree *so far as relates to the right of appeal.*" (Italics added.) Accord: Evans v. Evans, 232 Ky. 155, 157, 22 S.W.2d 578, 579 (decree appealable although trial court placed children in orphanage "until further orders of the court"); Bruce v. Bruce, 141 Okl. 160, 285 P. 30 (decree as to custody is not final in the sense of unchangeable but is final in the sense of appealable). In Iowa as in these other states, the trial court retains jurisdiction over custody in every case by virtue of the law. McKee v. Murrow, 241 Iowa 434, 40 N.W.2d 924. It makes no difference, so far as appealability is concerned, that jurisdiction is also retained by the trial

court by virtue of an express provision in the decree.

Any other rule would have untoward practical consequences. In this case the trial court provided for review of custody in six months. If this provision forecloses appeal during the review period, what about a provision for review of custody in 12 months or 18 months, thereby preventing the loser from appealing for that period although he tried and submitted the case for decision? He is entitled to prompt review on appeal. He ought not be required to hazard the grant of a discretionary interlocutory appeal by us. We ought not be placed in the position of having to grant one; that would mean discretionary appeals are not discretionary in these cases. Too, one more procedural pitfall would be placed in the pathway of appellants.

Another untoward consequence would be the tactical advantage which the winner in the trial court might have. A decree might give a husband custody of the children, with review in 18 months. If the provision for review of custody prevents appeal for 18 months, the husband might develop some sort of "prescriptive" right to custody merely from having the children with him for that period. Again the loser should not have to rely on a discretionary appeal.

Still another untoward practical consequence would be the uncertainty regarding the part of the decree granting the divorce itself. If the custody part cannot be appealed for the review period, does the divorce part also remain in suspension? If the review period is 24 months, do the parties remain married for that time without right of appeal, although they submitted the case for decision on the merits? On the other hand, if the divorce part of the decree goes into effect immediately but the custody part is not appealable during the review period, is the decree partly appealable and partly not? Would the loser as to the divorce have to appeal within 30 days, while the custody part remains in the trial court? In that event, would we rule on the divorce and the trial court rule on custody?

The way to avoid such tangles is to stay with the orderly procedure contemplated by our divorce statute and civil rules, looking toward a prompt trial and decree and appeal. If a trial court needs additional evidence on some aspect of the case, it can do as trial courts have always done: hold up decree shortly, request prompt submission of additional evidence on the point, and then pass decree. But if a provision for change on future developments is really necessary in a decree, the whole decree should nonetheless be held to go into effect when passed and be appealable, including the provision for change.

The provisions appearing lately in divorce decrees reserving jurisdiction regarding custody may stem from apprehension about the necessity of proving a change of circumstances in order to secure modification of a decree. See decree provision in Wells v. Wells, 168 N.W.2d 54 (Iowa). If the requirements for modification need to be relaxed, relief should be sought in the legislature, although this court itself has ameliorated the requirements a little where custody is the issue. See in that connection, Betzel v. Betzel, 163 N.W.2d 551, 555 (Iowa) ("However, in all these cases where child custody is the issue, the best interest of the children is the first and governing consideration."). But apprehension about the requirements for modification, if there is apprehension, ought not lead us to cast divorce procedure into disorder by denying the right of appeal when a trial court reserves jurisdiction over some part of a case.

To the extent it may hold otherwise, we now overrule Jackson v. Jackson, 248 Iowa 1365, 85 N.W.2d 590.

Plaintiff is granted $300 attorney fees of defendant in connection with this appeal. Costs to defendant.

Affirmed and remanded.

All Justices concur.