# IN THE COURT OF APPEALS OF IOWA

No. 13-1920
Filed July 30, 2014

IN RE THE MARRIAGE OF SHANE RUCKMAN
AND MARY RUCKMAN

Upon the Petition of
SHANE RUCKMAN,
        Petitioner-Appellee,

And Concerning
MARY RUCKMAN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Kathleen A.

Kilnoski, Judge.

        Mary Ruckman appeals from the district court's ruling denying her petition

to modify the parties' dissolution decree to change the physical care placement

of the parties' children pursuant to a conditional provision set forth in the original

decree.  **REVERSED AND REMANDED WITH DIRECTIONS.**

        Marti S. Sleister, Council Bluffs, for appellant.

        Stephen C. Ebke of Porter, Tauke & Ebke, Council Bluffs, for appellee.

        Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

We are presented with a difficult and unusual issue. Shane and Mary Ruckmans' 2007 dissolution decree, approved by the district court after the parties' entered into a written settlement agreement, contained a provision providing that if Mary met certain conditions, physical care of the parties' children would be transferred from Shane to her. In 2013, Mary filed a petition to modify the decree, asserting she had met the conditions set forth in the 2007 decree and requesting the decree be modified to place the children in the parties' joint physical care. Ultimately, the district court found, as argued by Shane, that Mary was required to prove there had been a substantial change in circumstances to warrant modification of the physical-care placement. The court concluded Mary did not meet that burden, and it denied her petition. Mary appeals, and upon our de novo review, we conclude the decree should be modified from the physical-care placement with Shane to a joint-physical-care arrangement as requested by Mary based upon her satisfaction of the conditions in the decree and the best interests of their children. Accordingly, we reverse the district court's ruling and remand with directions.

### I. Background Facts and Proceedings.

The parties married in 2002. They have two children, born in 2002 and in 2004. In September 2007, Shane filed a petition for dissolution of the parties' marriage, seeking the parties be awarded joint custody of their children, with the children being placed in his physical care. At that time, Mary was twenty-five and Shane was thirty-years old.

Later that month, the district court entered its decree dissolving the parties' marriage. The decree stated the parties had "entered into a written agreement settling all of the issues involved in this dissolution of marriage," and "[e]ach and all of the terms, provisions, and agreements between the parties set out in [the decree]" were approved by the court. The decree noted the court "reserve[d] jurisdiction to enforce the terms of [the decree] by process of contempt and by such other manner as contemplated by Iowa law."

The decree awarded joint legal custody of the children to both parties, and the children were placed in Shane's physical care. Mary was awarded visitation with the children every weekend, with Shane having the children on "occasional weekends" as agreed to by the parties. However, the decree went on to state:

> Once [Mary] earns between $20,000 and $30,000 a year and is able to support herself and the children in her care, with proof that she has suitable housing and each child has their own room, primary physical care shall be transferred to [Mary]. The children shall remain in [the same school district] regardless of which parent has their primary physical care, unless both parents move out of [that school district]. The above visitation schedule shall then be in effect for [Shane] or unless otherwise agreed upon between the parties.

In March 2013, Mary filed her petition to modify the parties' dissolution decree. She asserted there had been a substantial change in circumstances since issuance of the decree; specifically, she had met the conditions set forth in the 2007 decree, and she requested the children's placement in Shane's physical care be modified to place the children in the parties' joint care. She also requested her support obligation be terminated.

Shane filed his answer and requested Mary's motion be denied in its entirety. He affirmatively stated the purpose of the conditional paragraph in the

parties' 2007 decree "was based on the ability of [Mary] to provide more stability and a set schedule for the children," and he resisted her request for joint physical care based on "the length of time since the original [d]ecree, the stability for the children[,] and the potential negative effect any such change requested by [Mary] would have on [the children]." Additionally, he requested Mary's child support obligation be reviewed based upon her increased income.

A hearing on Mary's petition was held in October 2013. Mary testified she was not represented in the original dissolution proceedings because she could not afford an attorney at that time. She testified that Shane was represented, and it was his attorney that drafted the stipulation and decree that the parties signed. She testified she agreed to the arrangement because she thought that was what was best for her children at that point in time and that she would get custody of her children in the future if she met the conditions set forth in the provision.

Mary testified she had met the conditions in the provision of the decree, and though the decree provided that she would get physical care of the children when satisfying the conditions, she was only seeking joint physical care of the children. She testified she would keep the children in the same school district, but she admitted it would be a longer commute for the children—approximately a thirty-five minute drive as opposed to Shane's ten to fifteen minute drive. However, she testified that although the children would be in the car longer, it would not be an additional burden to the children because Shane dropped the children off at school approximately an hour early every day.

Mary further testified that she believed a shared custody arrangement would be in the children's best interests. She testified the change would be an easy adjustment for the children since they already spent two days at her home every week, and she testified the children had requested more time with her than the decree provided. She testified she and Shane were able to communicate about the children without problems and each supported the other's relationship with the children. She noted that in addition to paying her required child-support obligation and her half of the children's medical bills, she also voluntarily paid for the children's dental insurance and half of the costs of daycare. Mary requested the decree be modified for the parties to share physical care of the children and that Shane equally share in transportation. She also requested that the visitation provision be modified to give her and Shane two uninterrupted weeks in the summer for visitation and to change the parties' holiday visitation schedule to rotate holidays every other year, rather than every other holiday as set out in the decree.

Shane testified and admitted that Mary had met the conditions of the provision in the parties' decree to change custody, but he testified changing the care arrangement now would "disrupt the stability [the children were] used to." He testified he believed the drive to and from school from Mary's home would be approximately forty-five minutes, not thirty-five, and he testified that a change in care would be

> just more wear and tear on [the children]. They're going to have to obviously probably get up earlier, and with sports and stuff like that, if school gets out, she's going to have to transport them from school and then back out to school by 6:30 or so. Practice could run until 8:00, 8:30. It's going to vary, and then turn around and they get

back to her house.  If it's late, I mean, you got supper, homework, showers, things of that nature.

He testified that Mary was a good mother and overall the parties got along and were able to communicate, but he did not believe the children would benefit from any additional time with her.  However, he did request the court modify the decree to provide him additional visitation with the children on the weekends.  He also requested Mary's child-support obligation be reviewed.

Following the hearing, the district court entered its ruling denying Mary's request for modification.  The court concluded that, under the circumstances of the case

> in which the children have been in the [physical care] of [Shane] for six years, . . . Mary should have the burden of showing that there has been a substantial change in circumstances and that she can minister more effectively to the children than Shane, or that a shared physical care arrangement will promote the children's best interests better than the current plan.

The court further concluded Mary had not met that burden, finding that although Mary was dedicated to the children and had maintained an important place in their lives "despite the physical distance between her home and theirs," there "simply was no evidence that the children would benefit from a shared care plan." The court found "Shane has done an admirable job as their primary physical care parent," and he "has encouraged the children's ongoing relationship with their mother while providing exceptional stability and nurturing care for them."

Additionally, applying the applicable lower burden for modification of visitation provisions of a decree, *see In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009), the court determined the decree should be modified to award Shane one weekend per month, finding "Shane rarely was able to have

the children on the weekends since Mary was given visitation every weekend." The court also modified the decree to grant each parent two weeks of extended summer vacation with the children, but it declined Mary's request to change the holiday visitation schedule. Finally, the court found there had been a substantial change in Mary's income since the time of the original decree and her support obligation should be increased as set forth in the child support guidelines.

Mary now appeals.

## II. *Scope and Standards of Review*.

"We review an order modifying a decree for dissolution of marriage de novo." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g); *see also id.* We afford the district court "considerable latitude" in its determination "and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005); *see also Sisson*, 843 N.W.2d at 870. We note that "[p]rior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004).

## III. *Discussion*.

On appeal, Mary contends she was not required to show a material change in circumstances to enforce the parties' stipulated agreement approved by the court and incorporated into the dissolution decree. Alternatively, she argues that even if she was required to show a substantial change in circumstances, she met her burden by meeting the conditions set forth in the

relevant provision of the decree. Finally, she argues the district court erred in its child support calculation. We address her arguments in turn.

### A. *The Effect of the Decree's Custody-Transfer Provision.*

Iowa Code chapter 598 sets forth the factors we are to consider in determining child custody. *See* Iowa Code § 598.41 (2007)[1]; *see also In re Marriage of Hansen*, 733 N.W.2d 683, 697-99 (Iowa 2007). Section 598.41 first states:

> The court may provide for joint custody of the child by the parties. The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

*Id.* § 598.41(1)(a). The legislature has defined the "best interest of the child" as including, but not limited to, "the opportunity for maximum continuous physical and emotional contact possible with both parents, unless direct physical or significant emotional harm to the child may result from this contact." *Id.* § 598.1(1).

Once child custody has been determined and set in a decree, chapter 598 only expressly provides authority to modify that custody determination in three sections: 598.21D ("Relocation of parent as grounds to modify order of child custody"), .41C ("Modification of child custody or physical care—active duty"),

---

[1] We cite the 2007 Code of Iowa, the Code in effect at the time the dissolution decree was entered, but we note the relevant sections of chapter 598 have not been substantively since amended.

and .41D ("Assignment of visitation or physical care parenting time—parent serving active duty—family member"). Nevertheless, our courts have long permitted custody determinations be modified after established, but "only for the most cogent reasons." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *Jensen v. Jensen*, 25 N.W.2d 316, 321 (Iowa 1946) ("When a child is legally placed in a home where it receives good treatment and moral training, it should never be removed from that home, except for the most cogent reasons."). Consequently, a party seeking modification ordinarily shoulders a heavy burden:

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.

*Frederici*, 338 N.W.2d at 158; *see also Jensen v. Jensen*, 114 N.W.2d 920, 921 (1962) ("The changed circumstances, we have often said, must be substantial and such as was not within the knowledge or contemplation of the parties or the court when the original award was decreed."); *Crockett v. Crockett*, 106 N.W. 944, 946 (Iowa 1906) ("[I]n the light of the statute, and giving construction thereto, we have held repeatedly that a decree fixing custody . . . is conclusive, unless it shall be made to appear that by reason of some change of circumstance or condition not known to, or within the contemplation of, the court, an enforcement of its decree will be attended by positive wrong or injustice.").

That being said, a line of case law in Iowa has permitted a trial court to retain jurisdiction to review certain provisions of a decree without showing any change of circumstances. *See In re Marriage of Schlenker*, 300 N.W.2d 164, 165-66 (Iowa 1981) (citing *In re Fenchel*, 268 N.W.2d 207, 209 (Iowa 1978); *In re Stom*, 226 N.W.2d 797, 799 (Iowa 1975); *Shipley v. Shipley*, 182 N.W.2d 125, 127 (Iowa 1970); *Wells v. Wells*, 168 N.W.2d 54, 57 (Iowa 1969); *Tallarico v. Tallarico*, 164 N.W.2d 805, 807 (Iowa 1969); *Betzel v. Betzel*, 163 N.W.2d 551, 554-55 (Iowa 1968)). In *Betzel*, the supreme court explained the reason for this deviation from the ordinary standard:

> "At the time the court grants a divorce it may not be able to make a final determination of the issue of custody and may therefore award custody temporarily, or make a probationary arrangement, with the expectation that the application for a final award will be heard at a later date. Likewise the court may enter an order for temporary custody when the plaintiff takes a voluntary nonsuit. However, the [c]ourt, when granting a divorce, should not make a mere temporary order for custody when this can be avoided. A temporary order in such a case is apt to cause hardship, unhappiness, and instability in the lives of the parents and children."

163 N.W.2d at 555 (quoting 24 Am. Jur. 2d, *Divorce and Separation*, § 809, p. 919) (internal original alterations omitted). While this practice has been highly discouraged, our supreme court has not forbidden the practice.[2] *See id.* ("Although stopping short of forbidding the practice, we have discouraged the retention of jurisdiction to modify divorce decrees without a showing of change of

---

[2] We note we are not the only state to disfavor these provisions. In fact, as the Vermont Supreme Court recently noted, a majority of states have held that such provisions, *under direct attack*, are unenforceable and improper. *See Knutsen v. Cegalis*, 989 A.2d 1010, 1014 (Vt. 2009) (citing numerous rulings in support of its statement and that, "[i]n contrast, [it was] able to find only two courts that have upheld such provisions under direct attack.") (emphasis added). However, that is not the case before us. Rather, Shane attacks the provision collaterally, even though the provision was set forth in the agreement drafted by his own counsel.

circumstances."); *but see In re Marriage of Mitchell*, 531 N.W.2d 132, 133 (Iowa 1995) (citing *Schlenker* for the proposition that "provisions of a dissolution decree are final as to circumstances then existing and matters will not be relitigated in the absence of a showing of a change of circumstances"). In *Schlenker*, the court again stated there may be justification from departing from the ordinary change-in-circumstances standard in "exceptional cases," although it did "'not foresee circumstances in which a dissolution court is justified in issuing its decree piecemeal.'" 300 N.W.2d at 165-66 (Iowa 1981) (quoting *Fenchel*, 268 N.W.2d at 209). Yet, it reiterated that without express language in the decree "unequivocally" providing for later trial court review, any statements concerning retention of jurisdiction in a decree would be construed as the trial court's intention to require the regular change-in-circumstances standard for modification. *Id.* at 166. The court then cited two cases to distinguish how the court's intent would be interpreted: "*Betzel*, 163 N.W.2d at 555 (language not intended to permit modification without proof of change of circumstances)," and "*Wells*, 168 N.W.2d at 57 (stipulation of parties and language of decree clearly demonstrate intent to modify without requiring a change of circumstances)." *Id.*

In *Wells*, the court was faced with a decree containing a provision similar to the one in this case. 168 N.W.2d at 57. In that case, the parents entered into a stipulation, approved by the trial court and incorporated in the parents' dissolution decree, that the "matter of custody of the children herein provided for may be reviewed at the request of either [parent], the application therefor to be heard on or about July 15, 1966, and without the burden on either party of having to show change in circumstances." *Id.* at 56. Based upon the parents' stipulation

and the court's approval that a change of circumstances need not be shown, the court determined the original decree was not final and proceeded to consider the merits of the applications for modification without requiring a showing of a substantial change in circumstances. *Id.* at 57, 60-61. Instead, in reviewing the original custody determination, the court only considered the best interests of the children. *Id.* at 60-61.

Despite the supreme court's declaration in *Schlenker* in 1981 that jurisdiction-retention provisions in dissolution decrees were discouraged, the practice continued. This court was faced with a similar provision in *In re Marriage of Vandergaast*, 573 N.W.2d 601, 602 (Iowa Ct. App. 1997), more than fifteen years later. In *Vandergaast*, during the parents' original dissolution proceeding in October 1995, the parents entered into a stipulated agreement placing physical custody of their children in the father's care. 573 N.W.2d at 602. Their agreement further provided that after June 1, 1996, the mother could "without the necessity of showing a change of circumstances, request automatic review of the custodial arrangement." *Id.* at 602-03. The district court approved the parents' stipulation. *Id.* The mother filed her request for modification of the decree in June 1996 seeking, among other things, that the children be placed in her physical care. *See id.* at 602. Ultimately, the district court, without addressing whether there had been a substantial change in circumstances to warrant modification, determined the children should be placed with the mother and modified the parents' decree. *See id.* The father appealed the court's decision not to employ the usual change-in-circumstances standards in considering modification, and we upheld the district court's ruling en banc by a

majority of three judges, with two judges dissenting. *Id.* at 602-03. The majority concluded the facts did not present "one of the rare occasions allowing a departure from the general rule." *Id.* at 603. Nevertheless, because the parents entered into the stipulation voluntarily and the trial court lent its approval, the court concluded variance from the ordinary standard was appropriate, explaining:

> It would be unfair to [the mother] to now rule such stipulation was void and that she was under a burden to show a substantial change in circumstances. Such would involve detrimental reliance on the part of [the mother]. In addition, the children have been with her for a substantial period of time following the modification. The circumstances of this case lead us to conclude that it would be contrary to the best interests of the children to once again change their primary placement.

*Id.* at 603. However, the majority went on to state:

> We find in future cases that prior to entering *any* provision into a decree of dissolution allowing future review of child custody without the necessity of a showing of a change in circumstances, the trial court must require a showing that the case is within the exceptional circumstances contemplated by the supreme court in *Schlenker*. Such showing must be on the record and a finding stating the reasons for the stipulation must be stated in the decree.

*Id.*

Again, although these provisions are strongly disfavored, we are presented with another decree containing a jurisdiction-retention provision that does not expressly state the reasons for including the provisions. However, there is no question the parties' agreed to the provision, and the court approved of and incorporated the provision in its decree. As in *Wells* and *Vandergaast*, and as approved of in *Schlenker*, the district court's intent to retain jurisdiction of the custody matter is unequivocally set forth in the parties' decree. Under the language of *Schlenker*, like in *Wells*, this is one of the exceptional cases

contemplated by *Schlenker* where the court chose to retain jurisdiction and not require a showing of a substantial change in circumstances. *See Schlenker*, 300 N.W.2d at 165-66. Shane cannot now point out that these provisions are disfavored to his benefit, particularly in light of the fact he chose to include the provision in his proposed settlement agreement despite case law recommending against this type of provision. Here, the provision was ultimately agreed to by Shane and Mary, and it was approved by the court. Consequently, Mary was not required to show the ordinary standard in seeking modification of the custody provision of the dissolution decree.

Additionally, we note flaws in Shane's argument that the original decree contemplated Mary would be required to establish the ordinary standards for modification. First, the decree expressly sets out the limited conditions Mary was required to meet to obtain physical care of the children, and those were clearly the only conditions contemplated at the time of the decree to justify transfer to Mary. Moreover, there was nothing in the decree to alert Mary that she would have to establish more than those mere conditions, namely, that she could prove her ability to minister more effectively to the children's well-being. *See Frederici*, 338 N.W.2d at 158. Additionally, in applying the ordinary modification standards, Mary would be required to establish the changed circumstances were not contemplated by the court when the decree was entered, *see id.*; yet, given those conditions were expressly set forth in the decree, there is no possible way she could show those conditions were not contemplated at the time of the entry of the decree. Upon our de novo review of the record and the applicable law, Mary did

not have the burden to show that there had been a substantial change in circumstances for modification.

### B. Custody Determination.

Once the parent seeking modification of the care provisions has established the existence of a substantial change in circumstances, the parent must next ordinarily prove the ability to offer superior care to the children than that of the custodial-caregiver. *Id.* at 161; *see also Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). However, if the parties are on equal footing, such as in a joint-physical-care-modification case, those parties bear the same burden as the parties in an initial custody determination, and the question is which parent can render "better" care. *Melchiori*, 644 N.W.2d at 369; *see also In re Purscell*, 544 N.W.2d 466, 468 (Iowa Ct. App. 1995) ("[N]either parent should have a greater burden than the other in attempting to gain custody in an original custody proceeding."). Although Mary is not presently the children's physical caregiver, we conclude that, given the language of the provision in the decree along with Mary's request for joint physical care with Shane rather than requesting transfer of physical care to her, it is not required that Mary establish she would be a superior caregiver than Shane and could minister to the children's needs more effectively than Shane.

In so concluding, we rely upon *Wells* and chapter 598. It is clear that in determining child custody and care, "the best interests and welfare of the children stand as the paramount and controlling factor, being superior to any claim or interest of either parent," no matter whether the custody determination is the initial or a subsequent review. *See Wells*, 168 N.W.2d at 60 (Iowa 1969); *see*

*also* Iowa Code § 598.41(1)(a); Iowa R. App. P. 6.904(3)(o); *Braunschweig v. Fahrenkrog*, 773 N.W.2d 888, 891 (Iowa 2009) (stating section 589.41(1)(a) "gives the court discretion to determine custody and physical care arrangements for the best interest of the child"); *Ladd v. Ladd*, 176 N.W. 211, 212 (Iowa 1920) ("So far as [the child's] future custody is concerned, his best interest is paramount to any right of his father to his custody."). The court in *Wells* did not require either parent to establish superior care over the other in fashioning its custody determination; rather, it noted it had before it "two competing parents, each standing in about the same position with regard to pre-divorce conduct, both presently suitable to have custodial rights." 168 N.W.2d at 60. The court did comment that under the facts of its case, the children whose custody was at issue had "lived under a divided custody arrangement since the original decree" and "[r]esultantly no problem [was] presented relative to removal of any of them from an established suitable home in which they [had] become adjusted and [were] happy." *Id.* at 61. Looking at the children's best interests, the court determined the parents' two biological children should be placed in the mother's custody under the facts of the case. *Id.* Similarly, in *Vandergaast*, this court considered the best interests of the children in affirming the district court's modification of the children's physical-care placement from their father to their mother's care, and the majority found changing custody again at that juncture "would be contrary to [their] best interests." 573 N.W.2d at 603. We did not require the mother establish she could provide superior care than the children's father. *See id.* Consequently, we conclude the children's physical-placement hinges solely upon what is in their best interests.

In *Hansen*, the Iowa Supreme Court revisited the issue of joint physical care, finding the past ideology that the best interest of a child was "rarely served by joint physical care" was no longer an automatic presumption. 733 N.W.2d at 692, 696. The court did not go so far as to find joint physical care was favored in child custody cases, but it found, "in light of the changing nature of the structure of families and challenges to the sweeping application of psychological parent attachment theory, . . . the joint physical care issue must be examined in each case on the unique facts." *Id.* at 695. Ultimately, the court concluded:

> All other things being equal, . . . we believe that joint physical care is most likely to be in the best interest of the child where both parents have historically contributed to physical care in roughly the same proportion. Conversely, where one spouse has been the primary caregiver, the likelihood that joint physical care may be disruptive on the emotional development of the children increases.

*Id.* at 697-98.

Given our legislature's directive that a child's best interests are served by "the opportunity for maximum continuous physical and emotional contact possible with both parents" and that joint physical care is permissible, we conclude, under the facts of this case, that changing the children's care from Shane's physical care to joint physical care between the parents is in the children's best interests. *See* Iowa Code §§ 598.1(1), .41(1)(a), .41(5)(a). There is no evidence whatsoever that any "direct physical or significant emotional harm" may result from this arrangement. *See id.* In fact, the record establishes the opposite. Here, our de novo review of the record shows two parents who have provided a textbook example of cooperation in a joint custody situation. Each parent has supported the other's relationship with the children. Neither parent

has indicated any problem with the other until Mary decided to request joint care, something even lesser than had been originally agreed to by the parties. Though Shane contends the move to joint physical care will disrupt the children's lives, we conclude any disruption will be minimal and offset by the children's benefit of having maximum contact with each of their parents. Mary does not live so far away as to make a shared-care arrangement difficult, particularly in light of the fact that she already has the children two of the seven days every week and that Shane has them at school early every morning anyway. The record evidences that both parents frequent the children's activities and can coordinate their schedules to share care of these great children to afford them maximum contact with each parent. While there is no question that Shane has provided the children excellent care, he has not shouldered the burden alone. Both he and Mary, along with their significant others, have worked together to raise the children thus far to outstanding results. These children are so fortunate to have loving parents who can communicate with each other and work together for their best interests. Given the parties' stipulation, approved by the court, and considering the children's best interests under the facts of this case, we conclude the decree should be modified to provide the parents joint-physical care.

### C. Child Support.

In light of our conclusion that the decree should be modified to provide the parties joint physical care, the case must be remanded to the district court to recalculate the parties' child support obligations, if any. *See In re Seay*, 746 N.W.2d 833, 835 (Iowa 2008) (discussing "application of the offset method for calculating child support in cases involving joint physical care). Additionally, the

parties should submit to the district court "either individually or jointly, a proposed joint physical care parenting plan" addressing "how the parents will provide a home for the [children], how the [children's] time will be divided between the parents and how each parent will facilitate the [children's] time with the other parent, . . . and any other issues the court may require."   *See* Iowa Code § 598.41(5)(a).  The court should determine the joint physical care parenting plan and schedule, and it court should distribute transportation costs equally between the parties.

### *IV.  Conclusion.*

For the foregoing reasons, we reverse the district court's ruling on Mary's petition for modification of the parties' dissolution decree, finding her petition to change to a joint-physical-care arrangement should have been granted, based upon the parties' agreement and trial court's adoption and approval of the agreement containing a jurisdiction-retention provision, as well as the best interests of the children.  Accordingly, we remand to the district court for entry of an order consistent with this opinion.  Costs of this appeal are taxed to Shane.

**REVERSED AND REMANDED WITH DIRECTIONS.**